[No. S109597. July 29, 2004.]

STEVEN TRAVIS et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CRUZ, Defendant and Respondent.

## COUNSEL

Steven Travis, Stanley M. Sokolow and Sonya Sokolow, in pro. per.; Pacific Legal Foundation, James S. Burling and Harold E. Johnson for Plaintiffs and Appellants.

Paul B. Campos for The California Building Industry Association, Home Builders Association of Northern California and Building Industry Legal Defense Foundation as Amici Curiae on behalf of Plaintiffs and Appellants.

Harold Griffith as Amicus Curiae on behalf of Plaintiffs and Appellants.

Law Offices of Rosario Perry and Rosario Perry as Amici Curiae on behalf of Plaintiffs and Appellants.

Pahl & Gosselin, Stephen D. Pahl and Karen Kubala McCay for California Apartment Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Samuel Torres, Jr., and Dana McRae, County Counsel, and Dwight L. Herr, Assistant County Counsel, for Defendant and Respondent.

Dennis J. Herrera, City Attorney (San Francisco), Andrew W. Schwartz, William Chan and Ellen Forman, Deputy City Attorneys, for City and County of San Francisco and League of California Cities as Amici Curiae for Defendant and Respondent.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, Joseph Barbieri, Christiana Tiedemann and Alice Busching Reynolds as Amici Curiae.

## OPINION

**WERDEGAR, J.**—A Santa Cruz County ordinance imposes certain restrictions on second dwelling units on residential property. Plaintiffs Steven Travis and Stanley and Sonya Sokolow sought a writ of mandate to enjoin enforcement of the ordinance and remove permit conditions imposed pursuant thereto. Plaintiffs claim the ordinance conflicts with and is preempted by state statutes and that its enforcement unconstitutionally took their property without compensation. The question before us goes not to the merits of plaintiffs' challenge, but to whether it was timely brought.

We conclude that insofar as the action seeks removal of conditions imposed on Travis's development permit, it was timely brought within 90 days of the final decision imposing the conditions. (Gov. Code, § 65009, subd. (c)(1)(E).) That Travis challenges his permit conditions as invalid because they are based on a facially unconstitutional or preempted ordinance, rather than arguing the conditions or ordinance have an especially adverse effect on his property, does not affect the timeliness of his action. But because the Sokolows did not bring an action within 90 days of their permit's issuance, they may not now challenge, on any grounds, the conditions imposed on their permit. Finally, insofar as plaintiffs contend the ordinance is preempted by later enacted state statutes, and on this basis seek relief beyond removal of their permit conditions, such as an order requiring Santa Cruz

County (the County) to amend or cease enforcing the ordinance, we conclude their action is untimely under the applicable statute of limitations (Code Civ. Proc., § 338, subd. (a)).

We will thus affirm in part and reverse in part the decision of the Court of Appeal, which affirmed the superior court's denial of plaintiffs' writ petition.

FACTUAL AND PROCEDURAL BACKGROUND

In December 1981, the Board of Supervisors of the County (the Board) adopted an ordinance, effective January 15, 1982, allowing residential property owners to construct "affordable second dwelling units" on their property. The ordinance requires a development permit, limits second units to parcels of a certain minimum size, sets a maximum unit size, and restricts both the income of second unit tenants and the rent that can be charged for such units.

The ordinance is codified at section 13.10.681 of the Santa Cruz County Code (the Ordinance). Its restrictions on occupancy and rent, of particular importance in this litigation, are set forth as follows in subdivision (e): "The following occupancy standards shall be applied to every second unit and shall be conditions for any approval under this section:

"(1) Occupancy Restrictions: . . . Rental or permanent occupancy of the second unit shall be restricted for the life of the unit to either: [¶] (A) Households that meet the Income and Asset Guidelines established by the Board of Supervisors resolution for lower income households; or [¶] (B) Senior households, where one household member is sixty-two (62) years of age or older, that meet the Income and Asset Guidelines requirements established by Board resolution for moderate or lower income households; or [¶] (C) Persons sharing residency with the property owner and who are related by blood, marriage, or operation of law, or have evidence of a stable family relationship with the property owner. [¶] . . . [¶]

"(4) Rent Levels: If rent is charged, the rent level for the second unit, or for the main unit, if the property owner resides in the second unit, shall not exceed that established by the Section 8 Program of the Department of Housing and Urban Development (HUD) or its successor, or the rent level allowed for affordable rental units pursuant to Chapter 17.10 of the County Code, whichever is higher."

Subdivision (e)(7) of the Ordinance requires property owners, before receiving a building permit, to record a declaration, binding on successors in interest, to the effect that the rent and occupancy standards of the Ordinance will be observed.

Plaintiffs own residential properties in unincorporated Santa Cruz County. In 1999, Travis applied for and was granted a permit to construct a second dwelling unit on his property, subject to conditions imposed under the Ordinance. Travis filed an administrative appeal against the occupancy and rent conditions, which the planning director denied on June 21, 1999. The Sokolows similarly applied for and were granted a second unit permit containing occupancy and rent restrictions. Their permit was issued October 12, 1998; they did not pursue an administrative appeal.

Plaintiffs filed their petition for writ of mandate on September 7, 1999. They alleged the County had a duty to "keep its Second Unit Dwelling ordinance . . . in compliance with State and Federal laws and constitutions," a duty the County violated by placing Ordinance-dictated occupancy and rent conditions on second unit permits and by failing to amend the Ordinance so as to remove the restrictions. They prayed for a writ requiring the County to stop conditioning second unit permits on the Ordinance's occupancy and rent restrictions, to amend the Ordinance so as to remove those restrictions, to compensate second unit owners for lost rents and to refund any fines assessed, and to record with the County Recorder a document expunging all unlawful deed restrictions on second unit properties recorded pursuant to the Ordinance.

In a memorandum of points and authorities supporting their petition, plaintiffs explained their claims that the Ordinance violates state law and is unconstitutional. Plaintiffs contend the Ordinance's rent restriction conflicts with, and is preempted by, the Costa-Hawkins Rental Housing Act (Civ. Code, §§ 1954.50–1954.535; hereafter the Costa-Hawkins Act), in that the Costa-Hawkins Act generally exempts from local rent control laws dwelling units constructed after February 1, 1995 (Civ. Code, § 1954.52, subd. (a)(1)) and institutes vacancy decontrol for other units covered by local rent control laws (*id.*, subd. (a)(3)(C)). They further contend the Ordinance's occupancy restrictions violate, or command the property owner to violate, statutory guarantees of nondiscrimination in housing found in the Unruh Civil Rights Act (Civ. Code, § 51.2), Government Code section 65008, and the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) insofar as the Ordinance regulates second unit occupancy according to age or income. Finally, plaintiffs claim the deed restrictions the Ordinance requires on rents and occupancy are exactions bearing no reasonable relationship to the legitimate government reasons for prohibiting second units and, therefore, work a taking of property without compensation in violation of the Fifth Amendment to the United States Constitution.

The trial court denied the writ petition. The court concluded all plaintiffs' "facial" claims, including their claims of preemption, were untimely under Government Code section 65009 because they were not brought within 90 days of either the Ordinance's enactment or the effective dates of the assertedly preemptive state statutes. The Sokolows' "as applied" challenge was untimely, under Government Code section 65009, because they did not bring the action within 90 days of the final decision on their permit application. Travis's " 'as applied' regulatory taking claim" was timely but nonmeritorious.

The Court of Appeal affirmed solely on statute of limitations grounds. In the appellate court's view, all plaintiffs' claims were facial, rather than as applied, because plaintiffs did not allege the Ordinance was applied differently to their properties than to others or that the Ordinance had a "disparate fiscal effect" on them compared to other property owners. All claims were therefore subject to the limitation of Government Code section 65009, subdivision (c)(1)(B) and were untimely because not brought within 90 days of the Ordinance's last substantive amendment, which occurred in November 1997.

We granted plaintiffs' petition for review.

### DISCUSSION

As this case principally concerns the applicability and effect of two subdivisions of Government Code section 65009 (hereafter section 65009), we begin by reviewing that statute. Located in division 1 (Planning and Zoning) of title 7 (Planning and Land Use) of the Government Code, section 65009 is intended "to provide certainty for property owners and local governments regarding decisions made pursuant to this division" (§ 65009, subd. (a)(3)) and thus to alleviate the "chilling effect on the confidence with which property owners and local governments can proceed with projects" (*id.*, subd. (a)(2)) created by potential legal challenges to local planning and zoning decisions.

To this end, section 65009 establishes a short statute of limitations, 90 days, applicable to actions challenging several types of local planning and zoning decisions: the adoption of a general or specific plan (*id.*, subd. (c)(1)(A)); the adoption of a zoning ordinance (*id.*, subd. (c)(1)(B)); the adoption of a regulation attached to a specific plan (*id.*, subd. (c)(1)(C)); the adoption of a development agreement (*id.*, subd. (c)(1)(D)); and the grant, denial, or imposition of conditions on a variance or permit (*id.*, subd.

(c)(1)(E)). Subdivision (e) of the statute provides that after expiration of the limitations period, "all persons are barred from any further action or proceeding."

Of particular interest in this case are paragraphs (B) and (E) of section 65009, subdivision (c)(1). Including the introductory text of subdivision (c)(1), they read as follows: "Except as provided in subdivision (d),[1] no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶]

"(B) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance. [¶] . . . [¶]

"(E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903,[2] or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."

We proceed to consider whether and how each of these provisions, as well as other statutes of limitations raised by plaintiffs, apply to the present action.

I. *Plaintiffs' Attack on Permit Conditions Imposed on Their Properties Under the Ordinance*

Plaintiffs' action, in our view, is in part one to "determine the . . . validity" of conditions imposed on their permits and to "void, or annul" the decisions imposing those conditions. (§ 65009, subd. (c)(1)(E).) Plaintiffs allege that the County has violated its legal duties by imposing rent and occupancy conditions on second unit permits; that Travis unsuccessfully sought removal of the conditions to his permit at the administrative level and now seeks the same through judicial relief; and that the Sokolows, having unsuccessfully sought to have the Ordinance amended, seek judicial relief against the County's "exceeding its lawful authority by imposing" the permit conditions. They pray, inter alia, for orders requiring the County to cease imposing such conditions and to record an expungement of the rent and occupancy restrictions the Ordinance required them and other second unit owners to record

---

[1] Subdivision (d) of section 65009 extends the limitations period to one year for certain actions brought in support of affordable housing developments. In this court, plaintiffs do not contend their petition for writ of mandate comes within subdivision (d).

[2] Government Code sections 65901 and 65903 provide for hearing and decision on, and administrative appeals concerning, applications for variances, conditional use permits, and other permits.

against their deeds. To the extent it rests on such allegations and requests such relief, the action comes within section 65009, subdivision (c)(1)(E).

The action was brought within 90 days of final administrative action on Travis's permit; it thus is timely as to Travis's claim the conditions imposed on his permit are invalid. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*) [limitations period for challenge to application of land use regulation to specific property runs from "the final adjudicatory administrative decision"].) But the action was brought almost 11 months after the Sokolows' permit application was approved; it is thus untimely as to their claim of invalid permit conditions.

Despite the plain language of section 65009, subdivision (c)(1)(E), the County insists the subdivision is inapplicable to Travis's claims because Travis has challenged the permit conditions generally, as imposed pursuant to a preempted or unconstitutional ordinance, "rather than challenging the application of the ordinance to a particular permit." The County urges us to hold that paragraph (B) of section 65009, subdivision (c)(1), rather than paragraph (E), applies to all Travis's claims because the petition presents only facial claims of invalidity, without alleging any disparate application or effect on his property compared to other second units subject to the Ordinance.

We find the County's reasoning unpersuasive. True, plaintiffs' legal challenge to the Ordinance is properly characterized as facial in that it "considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) Yet plaintiffs object not only to the Ordinance's enactment and continued existence, but also to its *application* to their second dwelling unit permits. Plaintiffs' claim of unconstitutionality, for example, is not "a facial challenge to the . . . ordinance predicated on a theory that the mere enactment of the . . . ordinance worked a taking" (*Hensler, supra,* 8 Cal.4th at p. 24), but, rather, a claim that the County effected a taking by demanding invalid exactions as a condition of issuing them second unit permits. Plaintiffs' preemption arguments, to be sure, go solely to the Ordinance's facial validity, but their complaint, as we have seen, is aimed not only at the Ordinance's enactment or existence but also at the County's *enforcement* of the Ordinance against plaintiffs' own property.

█ Section 65009, subdivision (c)(1)(E), in setting a time limit for actions challenging permit conditions, does not purport to restrict the legal theories or claims that may be made in such an action, and we see no justification for reading such a substantive limitation into the clear procedural language of the statute. Subdivision (e) of section 65009 provides that after

expiration of the limitations period, "all persons are barred from *any* further action or proceeding." (Italics added.) A plaintiff, therefore, may not avoid the short 90-day limit of section 65009 by claiming that the permit or condition is "void" and thus subject to challenge at any time. (*Ching v. San Francisco Board of Permit Appeals* (1998) 60 Cal.App.4th 888, 891–894 [70 Cal.Rptr.2d 700] [challenge to conditional use permit as "null and void" fell within Gov. Code, former § 65907, the predecessor to § 65009, subd. (c)(1)(E)]; *Hawkins v. County of Marin* (1976) 54 Cal.App.3d 586, 592–593 [126 Cal.Rptr. 754] [same].) By the same token, an action is not removed from the purview of section 65009, subdivision (c)(1)(E) merely because the plaintiff claims the permit or condition was imposed under a facially unconstitutional or preempted law.

The County relies on *Hensler, supra,* 8 Cal.4th at page 22, in which this court stated: "If the challenge is to the facial validity of a land-use regulation, the statute of limitations runs from the date the statute becomes effective. Government Code section 65009 establishes a 120-day period of limitation for such actions."[3] But in *Hensler* we were not concerned with delineating the issues that could be raised in a *timely* challenge to permit conditions. The point of the cited passage was, rather, that an action in inverse condemnation based on an allegedly invalid subdivision ordinance, brought several years after the city had applied the ordinance to the plaintiff's property, was *untimely*, whether considered as an attack on the ordinance itself or on the city's application of the ordinance. (*Hensler, supra,* at pp. 7–8, 21–22.) Indeed, elsewhere in the decision we explained that a claim of regulatory taking, arising from imposition of a "development restriction," requires a showing that "the *ordinance, regulation,* or administrative action *is not lawful or constitutionally valid* if no compensation is paid." (*Id.* at p. 25, italics added.) *Hensler* thus does not stand for the proposition that a challenge to a permit or permit condition, timely under section 65009, subdivision (c)(1)(E), is rendered untimely merely because the theory of challenge is the facial invalidity of the ordinance upon which the permit or condition is based.

That the Ordinance could have been facially attacked in an appropriate action at an earlier time, before it was applied to Travis's property, does not make section 65009, subdivision (c)(1)(E) inapplicable to Travis's claim for removal of invalid conditions. This is not a case in which the plaintiff complains of injury *solely* from a law's enactment. (See *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 824 [107 Cal.Rptr.2d 369, 23 P.3d 601] ["Here, in contrast, the City's allegedly illegal

---

[3] In a footnote, we cited section 65009, former subdivision (c)(2) as establishing this 120-day period. (*Hensler, supra,* 8 Cal.4th at p. 22, fn. 10.) Section 65009's limitations period was later shortened to 90 days, and subdivision (c)(2) was renumbered as subdivision (c)(1)(B). (Stats. 1995, ch. 253, § 1, p. 874; Stats. 1999, ch. 968, § 5.)

actions include not only the Ordinance's initial enactment, but also the City's continued collection . . . of an unapproved tax"].) Travis complains of injury arising from, and seeks relief from, not simply the Ordinance's enactment or continued presence in the County Code, but the County's imposition on his second unit permit of conditions required by the Ordinance. Having brought his action in a timely way after application of the Ordinance to him, Travis may raise in that action a facial attack on the Ordinance's validity. (*Id.* at p. 822 [plaintiffs' attacks on the validity of the tax ordinance itself "are not barred merely because similar claims could have been made at earlier times as to earlier violations"].)

In the related context of local government development fees, the Court of Appeal has distinguished between a "legislative decision" adopting a generally applicable fee and an "adjudicatory decision" imposing the fee on a particular development. (*N.T. Hill Inc. v. City of Fresno* (1999) 72 Cal.App.4th 977, 986 [85 Cal.Rptr.2d 562].) Adjudicatory fee decisions, the court held, are subject to the protest procedures and limitations period set forth in Government Code section 66020; legislative fee decisions are subject only to the limitations period in Government Code section 66022. "Put slightly differently, section 66022 applies when the plaintiff's goal is a judicial finding that the legislative decision adopting the charge cannot be enforced in any circumstance against any existing or future development because of some procedural or substantive illegality in the decision and section 66020 applies when the plaintiff's goal is a judicial finding that the charge set by the legislative decision cannot be demanded or collected in whole or part with respect to the specific development." (*N.T. Hill Inc. v. City of Fresno, supra,* at pp. 986–987.)[4] Analogously, to the extent Travis seeks a finding that the Ordinance cannot be applied against him, and relief in the form of removal of the conditions on his permit, his challenge is to the County's adjudicatory decision imposing the conditions and comes within section 65009, subdivision (c)(1)(E).[5]

---

[4] The court added, "In the latter [adjudicatory] situation, the fundamental validity of the legislative decision enacting or modifying the fee is not in issue." (*N.T. Hill Inc. v. City of Fresno, supra,* 72 Cal.App.4th at p. 987.) As our discussion above indicates, we do not agree with any suggestion that a property owner's challenge to an adjudicatory decision on a development fee (or zoning) matter may not include an attack on the validity of the fee or zoning ordinance itself. More correct is that in the adjudicatory situation, the validity of the legislation cannot be the *only* issue at stake—there must be a challenged enforcement or application of the legislation against the plaintiff's property.

[5] The Attorney General, in an amicus curiae brief, points out that Travis's challenge to the adjudicatory permit decision should have been brought by petition for administrative mandate (Code Civ. Proc., § 1094.5) rather than ordinary mandate (*id.,* § 1085). But where the entitlement to mandate relief has been adequately pled, "a trial court may treat a proceeding brought under Code of Civil Procedure section 1085 as one brought under Code of Civil Procedure section 1094.5." (*County of San Diego v. State of California* (1997) 15 Cal.4th 68,

*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185 [114 Cal.Rptr.2d 459, 36 P.3d 2] does not suggest a different result. Without deciding whether the distinction drawn in *N.T. Hill Inc. v. City of Fresno* is correct, we there held the fee imposition decision at issue would in any case be deemed legislative rather than adjudicatory because the fee ordinance was expressly applicable to the plaintiff and "calculation of the fees was a purely ministerial act—assertedly performed by a computer—based on the formulas set forth in the fee legislation." (*Utility Cost Management v. Indian Wells Valley Water Dist., supra,* at p. 1194.) In the present case, the decision by the County's zoning officials to issue Travis a second unit permit subject to rent and occupancy conditions, while it may have been legally compelled by the Ordinance, required more than a purely mechanical or arithmetic process on their part.

The County's construction of section 65009 would, in addition, tend to produce unjust and potentially unconstitutional results, which we do not believe the Legislature intended. If a preempted or unconstitutional zoning ordinance could not be challenged by a property owner in an action to prevent its enforcement within 90 days of its application (§ 65009, subd. (c)(1)(E)), but instead could be challenged only in an action to void or annul the ordinance within 90 days of its enactment (*id.,* subd. (c)(1)(B)), a property owner subjected to a regulatory taking through application of the ordinance against his or her property would be without remedy unless the owner had had the foresight to challenge the ordinance when it was enacted, possibly years or even decades before it was used against the property. Like the "notice" rule rejected in *Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 626–627 [150 L.Ed.2d 592, 121 S.Ct. 2448] (the idea that a postenactment purchaser takes with notice of the legislation and therefore cannot claim it effects a taking), a construction of section 65009 barring any challenge to the validity of a zoning ordinance once 90 days have passed from its enactment—even in the context of its application to particular property—would allow the government, "in effect, to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land." (*Palazzolo v. Rhode Island, supra,* at p. 627.) The Legislature intended section 65009 to provide certainty to local governments

---

109 [61 Cal.Rptr.2d 134, 931 P.2d 312].) As the only question before us is timeliness, and as a writ of administrative mandate, like a challenge under section 65009, subdivision (c)(1)(E), must be brought within 90 days of the final administrative decision (Code Civ. Proc., § 1094.6, subd. (b)), we need not address the effect, if any, of plaintiffs' having failed to label their petition as one for administrative as well as ordinary mandate.

(§ 65009, subd. (a)(3)), but not, we think, at the expense of a fair and reasonable opportunity to challenge an invalid ordinance when it is enforced against one's property.[6]

We conclude, therefore, that Travis's challenge to the imposition of conditions on his second unit permit was timely brought, though the Sokolows' was not. The remaining question is whether plaintiffs' other claims for relief—that the County has, and is violating, a duty to repeal or amend the Ordinance or to cease enforcing it—are timely. We examine now the limitations statutes assertedly applicable to those claims.

## II. *Plaintiffs' Attack on the County's Maintenance and Continued Enforcement of the Allegedly Preempted Ordinance*

As noted earlier, Government Code section 65009, subdivision (c)(1)(B) sets a 90-day limitations period, running from the legislative body's decision, for bringing an action "[t]o attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance." Code of Civil Procedure section 338, subdivision (a) sets a three-year period for an action "upon a liability created by statute, other than a penalty or forfeiture." The three-year limitation, running from accrual of the action, does not apply "where, in special cases, a different limitation is prescribed by statute." (Code Civ. Proc., § 312.)

Plaintiffs contend the 90-day limitation prescribed by section 65009, subdivision (c)(1)(B) does not apply to their preemption claim because their challenge is not to the Board's decisions to "adopt or amend" the Ordinance, but to the Board's failure to repeal or amend the Ordinance and its continued enforcement despite having been preempted by the Costa-Hawkins Act in 1996. Application of section 65009 to claims of preemption by a later enacted statute is unworkable, they argue, because it would preclude any challenge to an ordinance that was valid when enacted but later preempted by state

---

[6] In suggesting, on the basis of *Palazzolo v. Rhode Island, supra,* 533 U.S. 606, that permittees and their successors in interest may bring actions to invalidate the Ordinance or the property restrictions imposed thereunder as unconstitutional takings of property *without regard to any statute of limitations,* the concurring and dissenting opinion (*post,* at p. 778) goes much farther than plaintiffs themselves. Plaintiffs disavow any claim that "statutes of limitations on takings claims may be 'set aside.' " Rather, plaintiffs argue, *Palazzolo* "affirms the federal constitutional right to bring an as-applied challenge when a land-use ordinance is first applied to one's property, even if one is the successor in interest to the person who owned the property when the ordinance was enacted." Such a challenge, plaintiffs concede, is subject to "the appropriate statute of limitations." We agree and observe that *Palazzolo* concerned only the effect of a postenactment change of ownership on takings claims, not the application of any statute of limitations.

law.[7] Hence, plaintiffs argue, Code of Civil Procedure section 338, subdivision (a)'s more general three-year limitations period for statutory liabilities is the applicable statute of limitations.[8]

The County maintains that facial attacks on such assertedly preempted laws are subject to the 90-day limitation, but that here (as the Court of Appeal held) the period ran from the Ordinance's last substantive amendment in 1997, rather than from its 1981 adoption. Code of Civil Procedure section 338, subdivision (a), the County argues, is inapplicable because a more specific limitations period, that in Government Code section 65009, subdivision (c)(1)(B), applies.

We agree with plaintiffs that their challenge to the Ordinance, to the extent it is based on preemption by later enacted state statutes (i.e., the Costa-Hawkins Act and Civil Code section 51.2), is subject to the three-year limit of Code of Civil Procedure section 338 rather than the 90-day limit of Government Code section 65009. Plaintiffs, in claiming the County has breached a duty to bring its zoning code into compliance with later enacted state law, are not complaining of the Ordinance's *adoption* but of the Board's failure, since the enactment of Civil Code section 51.2 in 1984 and the Costa-Hawkins Act in 1995, to repeal the Ordinance or amend it to conform to state law. To this extent, therefore, the action is not one to "attack, review, set aside, void, or annul the decision of a legislative body to *adopt* . . . a zoning ordinance." (§ 65009, subd. (c)(1)(B), italics added.)[9]

---

[7] The Costa-Hawkins Act was added by a 1995 statute effective January 1, 1996. (Stats. 1995, ch. 331, § 1, p. 1820.) The antidiscrimination statutes plaintiffs claim preempt the Ordinance's occupancy limits were added at earlier times. (See Stats. 1984, ch. 787, § 1, p. 2781 [adding Civ. Code, § 51.2]; Stats. 1980, ch. 992, § 4, p. 3140 [enacting Fair Employment and Housing Act]; Stats. 1971, ch. 1517, § 1, p. 2993 [adding Gov. Code, § 65008].)

[8] Plaintiffs also argue the Ordinance relates to rent control, not zoning. The Ordinance, however, is a zoning ordinance within the meaning of section 65009, subdivision (c)(1)(B). It is contained in chapter 13.10 of the Santa Cruz County Code, entitled "Zoning Regulations." It regulates land use by allowing a particular use, second dwelling units, in designated zones of the County. That the regulations imposed include a restriction on rental levels does not convert the Ordinance from a zoning regulation to a rent control law, for the two are not mutually exclusive. *Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952 [81 Cal.Rptr.2d 93, 968 P.2d 993] is not to the contrary: in remarking that a typical rent control law could, for purposes of constitutional analysis, be seen as a type of price control rather than a land use regulation (*id.* at p. 967), we had no occasion to consider whether a law restricting rents on conditionally permitted uses in particular geographic zones might also be considered a zoning ordinance for purposes of section 65009, subdivision (c)(1)(B).

[9] Lest our holding be misunderstood (see conc. & dis. opn., *post*, at p. 776), we emphasize it applies only to claims of preemption by statutes enacted *after the Ordinance's adoption*, and not to statutory or constitutional provisions already in force at the time the Ordinance was adopted. As the constitutional protections against taking of property without just compensation (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 19) were already in existence when the

Moreover, a challenge to the Ordinance based on its conflict with state laws passed in 1984 and 1995 could not have been brought within 90 days of the Ordinance's 1982 effective date. (See *Hawkins v. County of Marin, supra,* 54 Cal.App.3d at pp. 593–594, 126 Cal.Rptr. 754.) Section 65009 was intended to require prompt challenges to zoning ordinances, but not to demand the impossible.[10]

■ Plaintiffs' petition for declaratory and injunctive relief against the Ordinance's future enforcement is, nevertheless, untimely. The newest of the state statutes upon which plaintiffs rely for their preemption claim, the Costa-Hawkins Act, came into effect on January 1, 1996, more than three years before the petition was filed. Assuming the Costa-Hawkins Act subjects the County to a duty to repeal or amend the Ordinance to conform to state law, that duty first arose—and was first violated by the County's inaction—when the Costa-Hawkins Act became effective. As the period in Code of Civil Procedure section 338 begins running on accrual of the cause of action (*id.,* § 312), an action to enforce the County's asserted statutory duty had to be brought within three years of its initial violation, i.e., three years from the effective date of the assertedly preemptive statute.

Plaintiffs argue their action was brought "fewer than 3 years following the January 1, 1999, fully-effective date of Costa-Hawkins," apparently alluding to provisions of that law phasing in, between January 1, 1996, and January 1, 1999, vacancy decontrol on existing units already subject to local rent control ordinances. (See Civ. Code, § 1954.52, subd. (a)(3)(C).) But the conflict plaintiffs perceive between the Costa-Hawkins Act, which mandated immediate exemption of new units and eventual vacancy decontrol on all units, and the Ordinance, which restricted indefinitely rents on newly constructed second units, if it ever existed, existed as of the effective date of the Costa-Hawkins Act, January 1, 1996. If, as claimed, the County has, and is violating, a duty to repeal or amend the Ordinance to avoid a conflict with the state law, it had, and violated, that duty as of the day the state law came into effect. Plaintiffs' action to enforce a statutory obligation thus accrued on January 1, 1996; under Code of Civil Procedure section 338, they had three years from that date to bring it.

---

County adopted the Ordinance, a facial attack on the Ordinance as a taking of property would be an action to "attack, review, set aside, void, or annul the decision of a legislative body to adopt . . . a zoning ordinance" (§ 65009, subd. (c)(1)(B)), subject to the 90-day statute of limitations.

[10] While the Ordinance was twice amended (in 1997 and 1998) after the effective date of the Costa-Hawkins Act, neither amendment introduced any of the conflicts between the Ordinance and state law of which plaintiffs complain. Plaintiffs' petition thus does not seek to "attack, review, set aside, void, or annul the decision of a legislative body to . . . *amend* a zoning ordinance." (§ 65009, subd. (c)(1)(B), italics added.)

Plaintiffs also argue the action as a whole is timely under Code of Civil Procedure section 338 because it was brought "within three years of two applications of the Ordinance—one to the Sokolows in 1998 and one to Travis in 1999." They rely on *Howard Jarvis Taxpayers Assn. v. City of La Habra, supra,* 25 Cal.4th at pages 818–825, in which we deemed a facial attack on a local utility tax to accrue every time the city collected the tax. As applied here, the theory would hold a new facial invalidity claim (i.e., one seeking to overturn the legislative body's decision to adopt the zoning ordinance) accrues, and a new three-year period begins, whenever a zoning ordinance is employed to deny or impose conditions on a permit.

The theory of continuous accrual under Code of Civil Procedure section 338, subdivision (a) would, in this context, create an illogical contrast with the application of Government Code section 65009, subdivision (c)(1)(B). In a facial challenge to a zoning ordinance based on preexisting statutes or the Constitution, plaintiffs are limited, under section 65009, subdivision (c)(1)(B), to 90 days *from the ordinance's adoption,* which is the first time such a challenge could be brought. When the challenge is instead based on a later enacted state statute, the limitations period (under Code Civ. Proc., § 338, subd. (a)) also runs, as we hold above, from the first time the challenge could be brought, i.e., the initial accrual of the cause of action. Plaintiffs' continuous accrual theory would delay running of the statute only in the latter case, thus providing an anomalous and unwarranted benefit to those challenging a zoning ordinance on the ground of its postadoption preemption. Promptness would be required in one case, under section 65009, subdivision (c)(1)(B), but illogically excused in the other, under Code of Civil Procedure section 338, subdivision (a).

■ To adopt plaintiffs' theory would thus be to thwart the legislative purpose behind section 65009 without any necessity in justice or fairness. The express and manifest intent of section 65009 is to provide local governments with certainty, after a short 90-day period for facial challenges, in the validity of their zoning enactments and decisions. We hold (pt. I, *ante*) that the statute nonetheless provides a property owner full opportunity to challenge the validity of a zoning ordinance, as pertinent to the validity of permit conditions, when it is applied to him or her—the earliest time such conditions can be challenged. The policy requiring prompt challenges to a zoning ordinance also gives way in cases of preemption by a later enacted state statute. Property owners or taxpayers must be permitted to challenge the ordinance on the basis of such preemption after the preemptive state statute has taken effect—a challenge that could not have been made when, perhaps years earlier, the ordinance was first adopted. Both property owners and watchdog groups thus have, under our understanding of the statutes, full opportunity to challenge preempted ordinances on their face and in their application.

■ The legislative policy of requiring a prompt challenge, running from the earliest date the action could be brought, nonetheless remains clear in section 65009. Were we to hold that a facial challenge to a zoning ordinance, based on a later enacted preemptive statute, need not be brought within three years of initial accrual (the state statute's effective date) but may instead be brought at any time within three years of any application of the ordinance, we would directly contravene that legislative policy. (Cf. *Howard Jarvis Taxpayers Assn. v. City of La Habra, supra,* 25 Cal.4th at p. 825 [continuous accrual rule adopted in absence of specific legislative guidance].)

■ Alternatively, plaintiffs argue their taking claim comes within the *five*-year limitations period for an action "arising out of the title to real property, or to rents or profits out of the same." (Code Civ. Proc., § 319; see also *id.,* § 318 [five-year limitation for "action for the recovery of real property"].) We recently held the five-year period, though applicable to inverse condemnation actions based on a physical taking (see, e.g., *Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 867–868 [218 Cal.Rptr. 293, 705 P.2d 866]; *Frustuck v. City of Fairfax* (1963) 212 Cal.App.2d 345, 374 [28 Cal.Rptr. 357]), did not apply to a regulatory taking claim based on enactment of a zoning ordinance, as such government action neither effected "a physical invasion of the land" nor impaired "title to the land." (*Hensler, supra,* 8 Cal.4th at p. 24.)[11] In any event, plaintiffs' taking claim rests on the County's demand that, as conditions of their permit approvals, they record rent and occupancy restrictions on their deeds. The specific statute of limitations for such a challenge to permit conditions, as discussed above, is Government Code section 65009, subdivision (c)(1)(E). Code of Civil Procedure sections 318 and 319 are thus inapplicable. (Code Civ. Proc., § 312; see *Hensler, supra,* 8 Cal.4th at p. 22.)

■ Finally, plaintiffs suggest that preemption by state law renders a local ordinance not only unenforceable but also "null and void," and that consequently in this case "there *is no applicable limitations period* because there is essentially *no ordinance.*" Plaintiffs' claims would thus be timely whenever brought. Plaintiffs cite no authority for this approach, and we have discovered none. Nor does it appeal as a matter of logic. A preempted ordinance, while it may lack any legal effect or force, does not cease to exist; if it *did* cease to exist, any challenge to it would have no object. Plaintiffs here, for example, could not sensibly pray for an order that the County amend or

---

[11] *Sandpiper Mobile Village v. City of Carpinteria* (1992) 10 Cal.App.4th 542, 549 [12 Cal.Rptr.2d 623], upon which plaintiffs rely, applied Code of Civil Procedure section 319 to a regulatory taking claim, but did so without analysis, in reliance on *Garden Water Corp. v. Fambrough* (1966) 245 Cal.App.2d 324 [53 Cal.Rptr. 862], a case of physical invasion. In light of our holding in *Hensler, supra,* 8 Cal.4th at page 24, *Sandpiper Mobile Village v. City of Carpinteria, supra,* 10 Cal.App.4th 542, is disapproved to the extent it applied the five-year period to a regulatory taking claim.

repeal the Ordinance or stop enforcing it, if the Ordinance no longer existed. Just as section 65009, subdivision (c)(1)(E) applies to claims that a permit or condition is void (see *Ching v. San Francisco Board of Permit Appeals, supra,* 60 Cal.App.4th at pp. 891–894; *Hawkins v. County of Marin, supra,* 54 Cal.App.3d at pp. 592–593), so the statute of limitations governing the claim that an ordinance has been preempted by a later enacted state law, Code of Civil Procedure section 338, subdivision (a), applies despite the further contention that preemption rendered the ordinance void.

CONCLUSION

To the extent it challenges the validity of conditions the County imposed on Travis's development permit and seeks removal of those conditions, the action was timely brought. (§ 65009, subd. (c)(1)(E).) In all other respects the action is barred by the applicable statute of limitations. (Code Civ. Proc., § 338, subd. (a).) The Court of Appeal affirmed the trial court's denial of the writ solely on statute of limitations grounds and did not address the trial court's additional determination that the taking claim, to the extent timely, was without merit. Remand is thus appropriate.

DISPOSITION

We affirm in part and reverse in part the judgment of the Court of Appeal and remand the cause to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Concurring and Dissenting.—I concur with the majority's conclusion that Steven Travis's action challenging the validity of the conditions imposed by the County of Santa Cruz (hereafter County) on his development permit is timely and that Travis can raise a facial attack on the ordinance's validity under Government Code section 65009, subdivision (c)(1)(E). However, although the majority disclaims any such intent, its treatment of the constitutional claims effectively puts an "expiration date" on fundamental guarantees. (See *Palazzolo v. Rhode Island* (2001) 533 U.S. 606 [150 L.Ed.2d 592, 121 S.Ct. 2448].) From that portion of the analysis, I dissent.

Plaintiffs contend that the passage of the Costa-Hawkins Rental Housing Act (Civ. Code, §§ 1954.50–1954.535) has preempted the ordinance and that enforcement of the ordinance works a taking of their property without compensation. Admittedly, the interaction of the public interest and private constitutional protections raises complex questions, which are not easily

resolved. But, when considering constitutional implications, it is important for courts to think as carefully and to articulate governing principles as precisely as possible. The majority concludes an action seeking removal of permit conditions is timely if brought within 90 days of the final decision imposing the conditions. (Maj. opn., *ante*, at p. 762.) Challenges based on broader claims of invalidity, i.e., preemption or unconstitutionality, are subject to the three-year statute of limitations under Code of Civil Procedure section 338 and are thereafter permanently barred. The majority never explains, however, what policy imperative or maxim of constitutional interpretation compels the latter result.

The fundamental purpose served by statutes of limitations—even the stringent limitations of validation actions—is to prevent stale claims. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 787 [157 Cal.Rptr. 392, 598 P.2d 45].) They thus provide repose to individuals subject to legal actions or criminal prosecution. Statutes of limitations " 'are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755].) "Just determinations of *fact* cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost." (*Wilson v. Garcia* (1985) 471 U.S. 261, 271 [85 L.Ed.2d 254, 105 S.Ct. 1938], italics added.) Similarly, litigants may not " 'attack ancient administrative determinations on the ground they constitute a necessary foundation for current administrative action' " because it would " 'inject unacceptable uncertainty' " into administrative decision making and " 'emasculate the purposes of the statute of limitations.' " (*Traverso v. Department of Transportation* (2001) 87 Cal.App.4th 1142, 1148 [105 Cal.Rptr.2d 179], quoting *Miller v. Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371, 1376–1377 [238 Cal.Rptr. 915].)

In similar respects, statutes of limitations allow public entities to implement new enactments without concern for contingent liabilities that may not become manifest for many years. This latter concern justified the restrictions this court imposed in *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 [32 Cal.Rptr.2d 244, 876 P.2d 1043]: "The purpose of statutes and rules which require that attacks on land-use decisions be brought by petitions for administrative mandamus, and create relatively short limitation periods for those actions, and actions which challenge the validity of land-use statutes, regulations, and/or decisions, is to permit and promote sound fiscal planning by state and local governmental entities." (*Id.* at p. 27.)

Although the assertion of a constitutional right is subject to reasonable statutes of limitations (*Rider v. County of San Diego* (1991) 1 Cal.4th 1, 13 [2 Cal.Rptr.2d 490, 820 P.2d 1000]; *Rand v. Bossen* (1945) 27 Cal.2d 61, 65 [162 P.2d 457]), we have declared this principle in the context of vindication of personal claims or failure to challenge revenue measures. The rationale for imposing a limitations period breaks down, however, where the plaintiff seeks a declaration of constitutional invalidity or preemption rather than monetary damages or similar remedies. The desire to avoid stale claims dependent on ancient facts or to minimize potential fiscal disruption is not implicated in an action merely to conform an enactment to controlling authority.

The discussion in *Palazzolo* suggests a way to harmonize the countervailing interests at issue here. In rejecting the state's argument that a property owner who takes title to land after enactment of a regulation cannot assert a takings claim, the high court observed: "Just as a prospective enactment, such as a new zoning ordinance, can limit the value of land without effecting a taking because it can be understood as reasonable by all concerned, other enactments are unreasonable and do not become less so *through passage of time or title*. Were we to accept the State's rule, the postenactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable. A State would be allowed, in effect *to put an expiration date on the Takings Clause. This ought not to be the rule. Future generations, too, have a right to challenge unreasonable limitations on the use and value of land.*" (*Palazzolo v. Rhode Island, supra,* 533 U.S. at p. 627, italics added.)

Justice Stevens's concurring and dissenting opinion also endorsed the principle that future generations have a right to challenge unreasonable limitations on the use and value of land. "If a regulating body fails to adhere to its procedural or substantive obligations in developing land-use restrictions, anyone adversely impacted by the restrictions may challenge their validity in an injunctive action. If the application of such restriction to a property owner would cause her a 'direct and substantial injury,' [citation], I have no doubt that she has standing to challenge the restriction's validity whether she acquired title to the property before or after the regulation was adopted." (*Palazzolo v. Rhode Island, supra,* 533 U.S. 606, 638 (conc. & dis. opn. of Stevens, J.).) However, he stopped short of saying that a succeeding owner may obtain compensation for a taking of property from her predecessor in interest. (*Ibid.*)

The resolution of this case does not require us to address the merits of either claim. We are asked simply to decide whether a public entity's action may be insulated from review by the running of the statute of limitations. The zoning restriction here becomes a permanent limitation in the landowner's deed and will thus restrict subsequent purchasers. Considering the purpose of any limitations period, I see no reason to bar subsequent purchasers from ever challenging this ordinance simply because they have no need to obtain a permit. Moreover, even current owners who did not challenge a permit condition when it was imposed, may have standing to seek pure declaratory relief if the status quo is altered by preemption or subsequent interpretation.