Filed 3/29/16  Siegel v. City of Lawndale CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| FRED SIEGEL, | B258666 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS140246) |
| v. | |
| CITY OF LAWNDALE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Luis A. Lavin, Judge.  Affirmed.

Fred Siegel, in pro. per, for Plaintiff and Appellant.

Aleshire & Wynder, Tiffany J. Israel and Jeff M. Malawy for Defendants and Respondents.

Plaintiff and appellant Fred Siegel, doing business as Fred Siegel, ABC Income Tax, appeals from a judgment denying his petition for writ of mandate and injunctive and declaratory relief. In his petition, Siegel sought to invalidate as unconstitutional certain provisions of the Lawndale Municipal Code governing businesses operating out of residential properties. He brought this action against the City of Lawndale and the City Council of the City of Lawndale (collectively, City) after City revoked his license to operate his home business due to his violation of those provisions. The trial court found that Siegel's action was time-barred and, in any event, the provisions do not violate a property owner's constitutional rights. We affirm the judgment on the ground that the action is time-barred, and therefore do not reach the constitutional issue. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230 ["'[W]e do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us'"].)

## BACKGROUND

A.    *Relevant Provisions of the Lawndale Municipal Code*

This case involves two sections of the Lawndale Municipal Code[1] – sections 17.36.110 and 5.08.120[2] – that govern "home occupations." A "home occupation" is defined in the Municipal Code as "an occupation conducted by the occupant of a dwelling as a secondary use in which there is no display, no stock-in-trade, no commodity sold on the premises, no person employed other than residents of the

---

[1]    Further undesignated section references are to the Lawndale Municipal Code.

[2]    Section 17.36.110 is found in title 17 of the Municipal Code, which governs zoning; section 5.08.120 is found in title 5, which governs business taxes, licenses and regulations.

dwelling; and no mechanical equipment used, except for that necessary for traditional housekeeping and computer purposes."[3] (§ 17.08.020.) Home occupations are not allowed unless a valid home occupation permit has been issued. (§ 17.36.100.) In addition, any person conducting a business, including a home occupation, must procure a license from City; in the case of a home occupation, the license must be renewed annually. (§§ 5.05.020, 5.08.010, 5.08.120.) It appears that, in practice, a business license for a home occupation operates as both a license and a home occupation permit; there is a single application used, which is reviewed by the zoning division, and the applicant is given a copy of the relevant sections of the zoning regulations from title 17, including section 17.36.110, when applying for a license.

Section 17.36.110 provides, in relevant part: "Home occupation permits shall be issued by the city, after approval of the director upon payment of a fee as established by city council resolution provided that the following conditions are met: [¶] . . . [¶] G. That no sign or advertising device relative thereto shall be displayed on the premises other than on approved vehicles; [¶] H. That the use will not generate pedestrian or vehicular traffic substantially greater than traffic normal to the neighborhood in which it is located nor require the use of additional off-street parking facilities."

The section dealing with home occupations in the business taxes, licenses and regulation title of the Municipal Code is section 5.08.120. It provides, in relevant part: "Individuals residing in the city may undertake business activities within their residential dwelling unit or outbuilding thereto, provided all of the following provisions are complied with: [¶] A. The street address of the

---

[3]    Before 2002, the Municipal Code defined "home occupation" as "the utilization of a person's own residence or an outbuilding thereto for any business use, be it manufacturing or commercial." (Former § 17.36.090, repealed by Ord. No. 912-02.)

residential unit shall not be advertised as the location of the business activity. [¶] B. No clientele shall be permitted at the residential unit. [¶] . . . [¶] F. The use is permitted in the residential use zone." (§ 5.08.120.)

B.    *Facts Relevant to This Case*

Siegel has operated an income tax business from his home since 2001. In October 2000, before starting his home occupation, Siegel applied for and obtained a home occupation permit/business license from City. When he submitted his application, he received a copy of the home occupation zoning requirements. In addition, a member of the zoning division made a notation on Siegel's application stating: "No pedestrian activity on site, see conditions for home occupation, no storage."

In March 2008, City received complaints alleging that Siegel was violating City's home occupation zoning provisions. City staff investigated the complaints, and sent Siegel a letter regarding various violations that were observed. In addition to noting Siegel's violation of certain landscaping and other provisions, the letter stated: "Your home occupation must not occupy the required parking area for the property. No signs may be posted for advertising purposes on the property, and the business may not generate pedestrian or vehicular traffic, other than what is normal for the neighborhood. It has been observed that you have signs advertising your business and parking on your property, and it [is] further alleged that your business is generating excessive pedestrian and vehicular traffic to your property. It was also noted that your Home Occupation/Business License has not been renewed and at this time, is delinquent."

There is no evidence in the record regarding what, if anything, was done with respect to the allegations set forth in City's letter. City apparently received no further complaints regarding Siegel's home occupation during the next four years.

4

In April 2012, however, City received another complaint. City staff went to the property to investigate on April 11, 2012, and observed a sign posted on the front of the house advertising "ABC Income Tax." They met with Siegel, who admitted that he receives customers at his home for his business and allows those customers to park in the property's off-street parking area. Siegel was issued a courtesy notice regarding the violations of the Municipal Code.

On April 18, 2012, City staff noted that Siegel's violations were continuing, and on April 26, 2012, City's Finance Department sent a letter to Siegel revoking his business license. Siegel appealed the revocation and, following a hearing on the matter, the City Council upheld the Finance Director's determination to revoke the business license/home occupation permit on August 20, 2012.

On November 13, 2012, Siegel initiated the instant action against City by filing a petition for writ of mandate, injunction, declaratory relief, and administrative mandamus. The petition alleges 10 causes of action based upon alleged constitutional violations. The first four and the tenth causes of action challenge the revocation of Siegel's business license, and seek a writ of mandate to reinstate his license. The remaining causes of action seek injunctive or declaratory relief to prohibit future alleged constitutional violations by City.

In January 2013, City sent Siegel a letter informing him that the revocation of his license in 2012 did not prevent him from applying for a 2013 license. Siegel applied for, and received, a home occupation business license in March 2013. Siegel subsequently informed the trial court that City's issuance of the license in 2013 rendered moot his claims related to the revocation of his 2012 license, and that he would not be pursuing the first four causes of action.

In his opening brief on the petition, Siegel confirmed that the first four causes of action were moot. He argued, however, that City threatened to enforce sections 5.08.120 and 17.36.110 in the future, and asked the trial court to hold that

subdivisions (A) and (B) of section 5.08.120 and subdivision (G) of section 17.36.110 are unconstitutional because they infringe on the rights of free speech, association, and petition, and they deny property owners due process and equal protection.

In the statement of facts section of his brief, Siegel asserted that, until his license was revoked in 2012, City had not cited anyone operating a home occupation for violating section 5.08.120, subdivision (B) by allowing client visits. He also stated that he had not seen the staff report upon which the city council relied during the hearing on his appeal of the revocation of his license until he received the administrative record in this case, and he disputed several of the facts set forth in that report. Finally, Siegel asserted that City selectively enforced sections 5.08.120 and 17.36.110 against him, but did not enforce them against other businesses, and that City had a history of harassing him. Siegel purported to support the assertions in his statement of facts with citations to his declaration (and exhibits attached thereto), the administrative record, and several exhibits attached to a request for judicial notice.

In the argument portion of his brief, Siegel made the following arguments. First, he argued that section 5.08.120, subdivision (A), which prohibits the use of the home's address in advertising, is a content ban that impermissibly infringes on the rights of free speech and association. Second, he argued that section 5.08.120, subdivision (B), which prohibits clientele at the residential unit, impermissibly infringes on the rights of association and of speech for the purposes of petitioning for redress (because "Siegel assists clients in petitioning state and federal governments related to taxes"). Third, Siegel argued that section 17.36.110, subdivision (G), which prohibits signs or advertising devices related to the home occupation on the residential property, is a content ban that infringes on the rights of speech, association, and petitioning; he also argued that this subdivision

conflicts with City's "Sign Ordinance" that allows other signs at residences under less restrictive terms. Finally, Siegel argued that City violated his procedural due process rights by the way in which it conducted the hearing to revoke his 2012 license.

In its opposition brief, City argued that Siegel's constitutional challenges to sections 5.08.120 and 17.36.110 were facial challenges, and were barred by Code of Civil Procedure section 338, subdivision (a) (a three-year statute of limitations, which City contends is applicable to challenges to the validity of local ordinances), or by Government Code section 65009, subdivision (c)(1)(B) (a 90-day statute of limitations applicable to challenges to zoning ordinances). City also argued that sections 5.08.120, subdivision (A) and 17.36.110, subdivision (G) are valid regulations of commercial speech, and that section 5.08.120, subdivision (B) does not violate the rights to association or petition because it does not restrict a homeowner from preparing tax forms for clients (to the extent that involves petitioning activity), nor does it preclude the homeowner from meeting with clients at other locations. Finally, City argued that Siegel's due process claim relating to the hearing to revoke his 2012 license was moot because City issued him a license in 2013.

At the initial hearing on the petition, the trial court issued a tentative ruling (which is not part of the record on appeal) that apparently rejected Siegel's challenge to section 5.08.120, subdivision (B), but ruled in favor of Siegel on his other challenges. Addressing the ruling against Siegel, counsel for Siegel[4] noted that the court analyzed Siegel's argument as a facial challenge. He argued it should have been analyzed as an as-applied challenge because that subdivision

---

[4] Until the hearing, Siegel had represented himself. He associated counsel just before the hearing.

7

conflicts with section 17.36.110, subdivision (H) (which prohibits home occupation use that "generate[s] pedestrian or vehicular traffic substantially greater than traffic normal to the neighborhood"), and City arbitrarily chose which section to enforce against Siegel.  City argued that Siegel had not previously argued that the alleged conflict was a ground for invalidating section 5.08.120, subdivision (B), and that in any case, there was no such conflict.  After hearing City's argument on the statutes of limitations and the provisions banning signs or the use of the residence address in advertising, the court asked for supplemental briefing on two issues (whether Siegel's challenges were facial or as-applied, and how the court may interpret possibly conflicting provisions in order to avoid finding them unconstitutional) and continued the matter for another hearing.

At the continued hearing, the trial court explained that prior to receiving the supplemental briefs, it had struggled to understand Siegel's theory, i.e., whether it was a facial or as-applied challenge to the provisions at issue.  After reviewing the entire case, including the supplemental briefs, the court concluded that all of Siegel's claims were facial challenges, and that they were time-barred.  The court noted it also had concluded that even if the claims were not time-barred, the provisions at issue could be interpreted in a manner that would not offend the constitution.

After the hearing, the trial court issued a statement of decision and order denying Siegel's petition.  The court found that all of Siegel's claims challenging City's revocation of his home occupation business license were moot in light of City's issuance of a new license in 2013.  In addition, the court noted that Siegel alleged in his petition that certain provisions of the Municipal Code internally conflict and were applied to him in an arbitrary and capricious manner, but he did not present any arguments in his briefing before the court to support those allegations.  The court also noted that the petition sought relief for what it alleged

8

was an effort by City to punish Siegel for his past attempts to petition the City and other governmental entities for redress, and that Siegel set forth facts regarding those alleged acts in his opening brief, but the brief did not apply those facts to any of his constitutional challenges. Because the brief did not properly address those allegations, the court deemed those grounds for relief waived.

Addressing City's argument that Siegel's challenges to sections 5.08.120 and 17.36.110 are time-barred under Government Code section 65009, subdivision (c)(1), the court first examined whether those challenges were facial or as-applied. The court noted that Siegel did not argue that the advertising/sign bans set forth in sections 5.08.120, subdivision (A) and 17.36.110, subdivision (G) were applied in an impermissible manner as to him and did not present any evidence to show how City impermissibly enforces those provisions against him and not against other individuals subject to the provisions. The court also found that, although Siegel contended in his declaration that City had never enforced section 5.08.120, subdivision (B), against other persons who operated businesses from their homes, he did not offer any independent evidence to substantiate that contention, nor did he offer evidence that City had ever impermissibly or selectively applied that provision in the past. Therefore, the court found that Siegel presented facial challenges to all of those provisions.

Having found that Siegel presented facial challenges, the court concluded that those challenges were time-barred under Government Code section 65009, subdivision (c)(1). The court also found that even if those provisions were not zoning laws subject to the statute of limitations set forth in Government Code section 65009, Siegel's claims were barred by the three-year statute of limitations set forth in Code of Civil Procedure section 338, subdivision (a). Finally, the court found Siegel failed to show that the provisions at issue are unconstitutional. The court entered judgment against Siegel, denying the petition in its entirety.

9

Siegel filed a motion to vacate the judgment, which was deemed denied under Code of Civil Procedure section 663a, subdivision (b), when the trial court did not rule within 60 days from City's service of the notice of entry of judgment, and Siegel timely filed a notice of appeal from the judgment.

## DISCUSSION

Siegel raises numerous contentions on appeal, many of which are either forfeited because they were not raised below or are inadequately briefed on appeal (arguments 3, 4, 7, 8, 12, and 13). Others are related to claims that Siegel conceded to the trial court were rendered moot by City's issuance of a license to him in 2013 (arguments 1C and 1D).[5] Of his remaining arguments, we need address only two – his argument that the trial court's determination that he did not bring an as-applied challenge was faulty because the court failed to consider evidence that City had impermissibly or selectively applied section 5.08.120, subdivision (B) in the past, and his argument that Government Code section 65009 does not apply to his claims.

---

[5] Although Siegel asserts (in argument 10) that "License revocation issues are not moot," he misunderstands the trial court's ruling. He argues that City's issuance of a license in 2013 does not make the revocation of his 2012 license moot because City asserts the 2013 license is subject to the same restrictions that he was found to have violated with regard to his 2012 license. But the trial court found that Siegel's claims challenging the license revocation were moot because they sought a writ of mandate ordering City to reinstate a license Siegel no longer needs. That ruling does not affect Siegel's claims challenging the restrictions imposed upon home occupations.

A.	*The Trial Court Correctly Concluded That Siegel Asserts Only Facial Challenges*

Before we address the application of Government Code section 65009, we must first address Siegel's argument that the trial court failed to consider certain evidence in making its determination that Siegel presented only facial challenges, because that determination was critical to the court's conclusion that Siegel's claims were barred by Government Code section 65009, subdivision (c)(1)(B).

"A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. . . . [P]etitioners must demonstrate that the [statute's] provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*).)  An as-applied challenge, on the other hand, is a challenge that seeks "(1) relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied, or (2) an injunction against future application of the statute or ordinance in the allegedly impermissible manner it is shown to have been applied." (*Ibid.*)  "[A]n as-applied challenge requires evidence that the statute is or has been applied in an unconstitutional manner in the past." (*U.D. Registry, Inc. v. State of California* (2006) 144 Cal.App.4th 405, 419.)

In the present case, as noted, the trial court found that Siegel did not present as-applied challenges because he did not present evidence to show that City impermissibly or selectively applied sections 5.08.120 and 17.36.110 in the past. In his appellant's opening brief, Siegel contends that he did present such evidence. He points to a list of home businesses licenses issued by City in 2012, a

11

photograph of the back yard of the former mayor of City, a photograph of his home office, evidence related to City's prosecution of him for an alleged violation of a different zoning ordinance regarding hedges, and evidence regarding an auto body and paint shop in a nearby lot. None of this evidence, however, is sufficient to satisfy Siegel's burden.

For example, as Siegel notes in his appellant's opening brief, the trial court denied his request for judicial notice of the list of home business licenses issued. Siegel does not challenge the court's denial of his request, but even if he could show that the trial court's denial was erroneous, the list says nothing about how City applied (or did not apply) section 5.08.120, subdivisions (A) or (B), or section 17.36.110, subdivision (G) to any of those businesses.

Similarly, although Siegel contends the photograph of the former mayor's back yard shows that City selectively enforced section 5.08.120, the photograph alone is insufficient. First, Siegel presented no evidence that the former mayor's property is located in a residential zone and subject to section 5.08.120. Second, even if the property were subject to section 5.08.120, Siegel presented no evidence that the former mayor was never cited for any violations. These same infirmities also apply to the evidence related to the nearby auto body and paint shop – there is no evidence the property is located in a residential zone, nor is there evidence that the shop was never cited for violations, if any such violations took place.

Finally, the photograph of Siegel's home office and the evidence related to the hedges prosecution do nothing to show how City has impermissibly or selectively applied section 5.08.120, subdivisions (A) or (B), or section 17.36.110, subdivision (G).

Because Siegel failed to present evidence to show that City impermissibly or selectively applied those provisions, the trial court properly found that Siegel did not present as-applied challenges, and instead brought only facial challenges.

(*Tobe*, *supra*, 9 Cal.4th at p. 1084; *U.D. Registry, Inc. v. State of California*, *supra*, 144 Cal.App.4th at p. 419.)

B.      *Government Code Section 65009 Applies and Bars Siegel's Claims*

As noted, the trial court found that Siegel's claims were barred by Government Code section 65009, subdivision (c)(1)(B) and (E).  On appeal, Siegel argues that Government Code section 65009 does not apply to this case because its purpose is to "make[] sure low income housing projects are not held up by minor contingencies and [it] only applies to a license for construction of a housing project."  He is incorrect.

Government Code section 65009, subdivision (c)(1) provides in relevant part:  "Except as provided in subdivision (d),[6] no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision:  [¶] . . . [¶]  (B)  To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance.  [¶] . . . [¶]  (E)  To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."

In *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 (*Travis*), the California Supreme Court explained the purpose of Government Code section 65009:  "Located in division 1 (Planning and Zoning) of title 7 (Planning and Land Use) of the Government Code, section 65009 is intended 'to provide certainty for

---

**6**      Subdivision (d) of Government Code section 65009 relates to affordable housing developments, and is not at issue here.

property owners and local governments regarding decisions made pursuant to this division' [citation] and thus to alleviate the 'chilling effect on the confidence with which property owners and local governments can proceed with projects' [citation] created by potential legal challenges to local planning and zoning decisions. [¶] To this end, [Government Code] section 65009 establishes a short statute of limitations, 90 days, applicable to actions challenging several types of local planning and zoning decisions [including the adoption of a zoning ordinance and the grant, denial, or imposition of conditions on a variance or permit] [citation]. Subdivision (e) of the statute provides that after expiration of the limitations period, 'all persons are barred from any further action or proceeding.'" (*Travis*, *supra*, 33 Cal.4th at pp. 765-766.)

As explained by the appellate court in *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312 (*Sonoma*), "[t]he limitations periods set out in the statute are triggered by specific acts of local land use planning authorities. [Citation.] For the actions described in [Government Code] section 65009, subdivision (c)(1), the 90-day limitations period begins to run from the date on which the challenged decision is made. [Citation.] Thus, where a party brings a facial challenge to a zoning ordinance, the limitations period begins to run on the date the ordinance becomes effective. [Citation.]" (*Sonoma*, *supra*, 190 Cal.App.4th at p. 1324.) If a party challenges conditions attached to a conditional use permit or other permit, the limitations period runs from the date the permit was approved or, if the party files an administrative appeal against the conditions imposed, the date of final administrative action on the permit. (*Travis*, *supra*, 33 Cal.4th at p. 767.) If a party brings a facial challenge and also challenges conditions attached to a conditional use permit or other permit, the facial challenge may be heard more than 90 days after the enactment of ordinance, but only if the challenge to permit conditions is timely filed. (*Id.* at pp. 768-769.)

In this case, section 17.36.110 was enacted in 1971, when City adopted Ordinance No. 245, and section 5.08.120 was enacted in 1991, when City adopted Ordinance No. 685-91. Therefore, Siegel's facial challenge to these provisions, which was brought in 2012, is barred by Government Code section 65009, subdivision (c)(1)(B), unless his challenge can be deemed a challenge of the conditions applied to his home occupation permit and it was timely filed under subdivision (c)(1)(E) of Government Code section 65009. We conclude it cannot.

Although Siegel filed the petition in this case within 90 days after the final administrative action on his appeal from the revocation of his home occupation permit/business license, that administrative action is not the relevant action for purposes of computing the time limit for filing a challenge to the conditions on his permit. Under *Travis*, the limitations period for a challenge to conditions imposed on a permit starts to run when those conditions are imposed unless a timely appeal is taken from the imposition of those conditions. It is undisputed that Siegel first obtained a home occupation permit/business license on October 30, 2000, and that the permit/license was issued subject to the conditions set forth in sections 5.08.120 and 17.36.110. Siegel did not file an appeal from the imposition of those conditions. Therefore, his challenge, brought more than 12 years after he first obtained a home occupation permit/business license is untimely, and his action is barred. (Gov. Code, § 65009, subds. (c)(1)(E), (e).)

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.


16