[No. A118327. First Dist., Div. Two. June 20, 2008.]

URBAN HABITAT PROGRAM et al., Plaintiffs and Appellants, v.
CITY OF PLEASANTON et al., Defendants and Respondents.

## COUNSEL

Public Advocates, Inc., Richard A. Marcantonio, Elisabeth Voight, Angelica K. Jongo; California Affordable Housing Project, Public Interest Law Project, Michael Rawson, Craig D. Castellanet; Munger Tolles & Olson, Carolyn Hoeker Luedtke, Lika C. Miyake and Tyler A. Roozen for Plaintiffs and Appellants.

Ilene J. Jacobs for California Rural Legal Assistance, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Luz Buitrago for Law Center for Families as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kyra Kazantzis for Public Interest Law Firm a Program of the Law Foundation of Silicon Valley as Amicus Curiae on behalf of Plaintiffs and Appellants.

Crystal Sims for the Legal Aid Society of Orange County as Amicus Curiae on behalf of Plaintiffs and Appellants.

Mona Tawatao for Legal Services of Northern California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Shashi Hanuman and Lisa Jaskol for Public Counsel as Amicus Curiae on behalf of Plaintiffs and Appellants.

Ken Babcock and Ezequiel Gutierrez for The Public Law Center as Amicus Curiae on behalf of Plaintiffs and Appellants.

S. Lynn Martinez and Richard A. Rothschild for The Western Center on Law and Poverty as Amicus Curiae on behalf of Plaintiffs and Appellants.

Michael H. Roush, City Attorney; Hanson Bridgett Marcus Vlahos & Rudy and Thomas B. Brown for Defendants and Respondents.

Zack Cowan for League of California Cities as Amicus Curiae on behalf of Defendant and Respondent City of Pleasanton.

---

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

This is an appeal from a judgment of dismissal of the first amended petition of plaintiffs and appellants Urban Habitat Program and Sandra DeGregorio (collectively referred to as Urban Habitat) for a writ of mandate and their complaint for declaratory and injunctive relief (the complaint), following the demurrer of defendants and respondents City of Pleasanton and Pleasanton City Council (collectively referred to as City).

Urban Habitat contends the trial court erred in granting the City's demurrer because (1) it misconstrued the applicable statutes of limitations set out in Government Code section 65009[1] and Code of Civil Procedure section 338, subdivision (a); and (2) it misapplied the ripeness doctrine. We agree and, accordingly, reverse the judgment of dismissal except as it applies to two causes of action (the fifth and sixth), as to which we affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties*

Appellant Urban Habitat Program is a nonprofit corporation that "works to ensure equitable and non-discriminatory access to affordable housing and other opportunities throughout the Bay Area . . . ." Appellant Sandra DeGregorio lives in Pleasanton, and is a "very-low income Latina single mother with minor children."

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

B. *The Housing Element*

The complaint alleges that, under California's Housing Element Law (§ 65580 et seq., hereinafter referred to as the Housing Element Law), the City was required to pass, as part of its general plan, a "Housing Element," which is designed to "make adequate provision for the housing needs of all income groups, including accommodating the local government's share of the RHNA [Regional Housing Need Allocation]." The City enacted its Housing Element in 2003, a year after the statutory deadline for doing so.

The City's share of the Regional Housing Need Allocation was allocated, pursuant to state statute, by the Association of Bay Area Governments. During the 1999–2006 planning period, the City was allocated 729 new units of "very low income" housing, 455 units of "low-income" housing, 1,239 units of "moderate-income" housing and 2,636 units of "above-moderate" housing.

The City's 2003 Housing Element disclosed that, under current planning policies, including current zoning provisions, there would be a deficit of appropriate sites for 871 units of high-density, lower income housing during the 1999 to 2006 planning period. The City "determined that 30 to 40 acres of land presently designated for non-residential use must be designated 'HDR' [high density residential] through General Plan amendments" and rezoning. The City's Housing Element contained a requirement described in "Program 19.1" that "appropriate modifications to the Land Use Element [of the general plan] and rezonings" would occur "as soon as possible, but no later than June 2004 . . . ."

The City's Housing Element was granted "limited 'conditional approval' " by California's Department of Housing and Community Development, the state agency charged with, among other things, "reviewing local Housing Elements for substantial compliance with the Housing Element Law." A finding of compliance was conditioned " 'on the effective and timely implementation (June 2004) of the general plan amendment and rezoning strategy as described in Program 19.1.' "

On March 7, 2005, California's Department of Housing and Community Development notified the City that it had revoked the City's Housing Element compliance status because the City had not met the June 2004 date for rezoning and that, in fact, "final action on the rezoning had 'slipped' from a scheduled date of November or December 2006 to 'the first quarter of

2007.' " In January 2007, the City announced that its projected completion date for rezoning would be December 2007 or later.

## C. *The City's Housing Cap and Growth Management Ordinance*

The complaint also identified local legislation that, as of April 2006, made it impossible for the City to meet its share of the Regional Housing Needs Allocation. In 1996, the City's voters approved Measure GG, or the "Housing Cap" initiative. Measure GG amended the Housing Cap provision contained in the City's general plan to provide that the City shall (1) maintain a "maximum housing buildout of 29,000 units"; (2) monitor and zone so as not to exceed the maximum housing buildout (a mandate also referred to as "Program 15.1"); and (3) permit amendments to the Housing Cap initiative only by a vote of the people.

Although the City consistently asserted that the number of units that could permissibly be built under the Housing Cap was sufficient to meet its Regional Housing Needs Allocation, Urban Habitat alleges it discovered in April 2006 that this was not the case. On April 24, 2006, the city manager wrote a memorandum to the city council stating "that the City's remaining unmet portion of its share of the RHNA . . . was 2,889 units . . . ." The complaint alleges that, because the " 'remaining residential potential' " under the Housing Cap was only 1,686 units, the City could not meet its obligation, under California law, to satisfy its Regional Housing Needs Allocation. The complaint alleges that "[a]t the present time, the Housing Cap poses an immediate regulatory barrier to the construction of new affordable housing, in that the units remaining under the Housing Cap . . . are numerically insufficient to satisfy the City's remaining unmet share of the Bay Area Regional Housing Need Allocation . . . ."

Urban Habitat also alleges that the City's implementation and enforcement of Program 15.1 independently prevents the City from fulfilling its obligations under the Regional Housing Needs Allocation because the City has chosen to comply with the Housing Cap rather than state law.

The City's Growth Management Ordinance is another local ordinance that, according to the complaint, has been implemented in a manner that, as of April 2006, makes it impossible for the City to meet its share of the Regional Housing Needs Allocation, which runs through 2009. Specifically, under the Growth Management Ordinance, which was adopted in 1986 and amended in 1998, the maximum number of building permits allowed during 2007, 2008, and 2009 is 2,250 units. According to the complaint: "This total number of

permits is numerically insufficient to accommodate the unmet balance of the City's share of the RHNA during the present planning period, which (according to City documents) was 2,889 as of April 24, 2006. Accordingly, a current and immediate conflict exists between the Growth Management Program and the City's obligations under state law."

The City, in its 2003 Housing Element, required through a "Program 34.5" that it "[a]mend the Growth Management Ordinance to allow the City Council to override the annual housing allocations in order to grant approvals to projects so that the City is able to meet its regional housing needs goal by the end of the planning period." To date, the City has not done so. A second Housing Element Program, in this case Program 34.1, "directs the City Council to reserve the first 100 allotments out of the annual total of 750 building permits for projects containing 25 percent or more lower-income units, with the annual total of 750 building permits . . . ." At this rate of allotment, however, the City will be unable to fulfill its present obligations under state law.

The complaint alleges that the City concealed the existence of the conflict between the Housing Cap, the Growth Management Ordinance, and the City's obligations under state law by denying the existence of such a conflict. Not until the April 24, 2006, staff memorandum was made available to the public, did Urban Habitat become aware of this conflict.

D. *Housing Discrimination*

The complaint also alleges that City actions favor the development of low-income housing units that are not suitable for families with children. Although the City's Housing Element requires the City to provide housing that includes "apartments for large families" and "affordable units for single-parent heads of households," the City has allegedly failed to do so, and has instead implemented the Housing Element in a discriminatory manner by failing to provide for families with children. As a result of this practice, and other land use planning decisions, the City's development of low-income housing has been "at the expense of families with children."

E. *Notice to the City*

By letter dated June 20, 2006, Urban Habitat notified the City "of the violations of state law caused by the Housing Cap and Growth Management Program; the City's failure to adopt and implement a legally-sufficient

Housing Element, which designates and zones sufficient vacant land to meet the projected housing needs in all income levels; and the City's discriminatory housing practices."

### F. *Legal Action*

Urban Habitat filed a complaint against the City on October 17, 2006. On May 17, 2007, the trial court sustained, without leave to amend, the City's demurrer to the complaint. It ruled that each cause of action in the complaint was barred because Urban Habitat had "failed to allege any cognizable cause of action which is not barred by the applicable statute of limitations ([Code Civ. Proc. Section] 338 and Cal. Gov. Code section 65009) . . . ." The court also sustained the demurrer without leave to amend on the grounds that Urban Habitat's first through third causes of action were not ripe.

This timely appeal followed.

## III. DISCUSSION

### A. *Standard of Review*

"We review a trial court's ruling on a demurrer independently. [Citation.]" (*Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 281 [12 Cal.Rptr.3d 21].) "Our task in reviewing a judgment of dismissal following the sustaining of . . . a demurrer [without leave to amend] is to determine whether the complaint states, or can be amended to state, a cause of action. For that purpose we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed. [Citations.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

### B. *Section 65009*

Both the City and Urban Habitat make vigorous arguments regarding whether the trial court was correct in holding that Urban Habitat's complaint was barred by section 65009, subdivision (d). The City contends that Urban Habitat's complaint was untimely under that section because the complaint challenges growth management laws adopted by the City in the 1980's and 1990's, and the City's Housing Element, which was adopted in 2003. The City argues that section 65009, subdivision (d), imposes a one-year statute of limitations on these challenges, a period that begins to run on the date of enactment and, therefore, the trial court did not err in finding them barred.

 Urban Habitat argues that the statute of limitations began to accrue 60 days after it gave notice to the City of its claims, and it then had one year

from this date to file its complaint. Under this theory of accrual, Urban Habitat argues its complaint is timely.

We begin with an overview of section 65009. Section 65009 imposes relatively short statutes of limitations on legal challenges to local land use decisions. (§ 65009, subd. (a)(2).) As our Supreme Court explained in *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 765 [16 Cal.Rptr.3d 404, 94 P.3d 538] (*Travis*), it does so in order to " 'provide certainty for property owners and local governments regarding decisions made pursuant to this division' (§ 65009, subd. (a)(3)) and thus to alleviate the 'chilling effect on the confidence with which property owners and local governments can proceed with projects' (*id.*, subd. (a)(2)) . . . ."

■ Section 65009 is made up of eight subdivisions, four of which are relevant to this appeal. The first, section 65009, subdivision (a), identifies the goal of section 65009 as providing "certainty for property owners and local governments regarding decisions made pursuant to this division." (§ 65009, subd. (a)(3).) It also states that the statute applies to challenges to the land use planning decisions of local authorities. (§ 65009, subd. (a)(2).)

■ The next subdivision, section 65009, subdivision (b), limits proceedings to challenge a "finding, determination, or decision" of a public agency in a land use matter made at a "properly noticed public hearing" to issues that were raised at the hearing (unless the issues "could not have been raised . . . by persons exercising reasonable diligence" or if the body conducting the hearing prevented the issue from being raised). (§ 65009, subd. (b)(1)(A), (B).)

■ The third subdivision, section 65009, subdivision (c), sets a 90-day limit on the time for challenging local "decision[s] . . . to adopt or amend" (§ 65009, subd. (c)(1)(A)) ordinances, regulations, development agreements, or permit conditions. (§ 65009, subd. (c)(1)(A)–(F).) The 90-day time limit begins to run from the date the decision is made. Section 65009, subdivision (c)(2), provides that the 90-day time period may be extended to the "date that the Department of Housing and Community Development" makes findings regarding a housing element.

■ Finally, section 65009, subdivision (d), provides for a longer period of limitations, specifically one year, for claims "brought with respect to actions taken pursuant to" a variety of land use planning statutes (§ 65009, subd. (d)(2)), as long as these claims are "brought in support of or to encourage or facilitate the development" of low-income housing. (§ 65009, subd. (d)(1).) A cause of action for a challenge to land use action involving low-income housing accrues either 60 days after notice is given of the

deficiency in a "general plan, specific plan, or zoning ordinance" or 60 days after the local legislative body takes a final action in response to the notice, whichever occurs first. (§ 65009, subd. (d)(2).)

## C. *Time for Filing Notice Under Section 65009, subdivision (d)*

In sustaining the City's demurrer, the trial court held that the limitations period set out in section 65009, subdivision (d),[2] began to run on the dates the City enacted the 1986 Growth Management Ordinance and the 1996 Housing Cap. It concluded, therefore, that Urban Habitat was required to file suit within one year of the dates of those enactments. Urban Habitat contends that the trial court erred in reaching this conclusion because the one-year limitations period set out in section 65009, subdivision (d) began to run not on the date the city enacted the Growth Management Ordinance and the Housing Cap but on the date Urban Habitat first gave notice of its claims. Urban Habitat also argues that the statute contains no requirement that a notice be filed at any particular point after a decision is rendered by a local authority. Rather, it contends that the only statute of limitations applicable to its claim is one that begins to run 60 days after notice is filed with the City. The City responds that Urban Habitat's interpretation of section 65009, subdivision (d), amounts to an "open-ended" limitations period, which must be rejected because it is at odds with the statute's stated policy that there must be finality in land use planning decisions. We believe both parties are incorrect.

 Any claim that challenges the "decision" of a local authority and is brought "in support of or to encourage or facilitate the development of

---

[2] Section 65009, subdivision (d), provides as follows: "An action or proceeding shall be commenced and the legislative body served within one year after the accrual of the cause of action as provided in this subdivision, if the action or proceeding meets both of the following requirements: [¶] (1) It is brought in support of or to encourage or facilitate the development of housing that would increase the community's supply of housing affordable to persons and families with low or moderate incomes, as defined in Section 50079.5 of the Health and Safety Code, or with very low incomes, as defined in Section 50105 of the Health and Safety Code, or middle-income households, as defined in Section 65008 of this code. This subdivision is not intended to require that the action or proceeding be brought in support of or to encourage or facilitate a specific housing development project. [¶] (2) It is brought with respect to actions taken pursuant to Article 10.6 (commencing with Section 65580) of Chapter 3 of this division, pursuant to Section 65589.5, 65863.6, 65915, or 66474.2 or pursuant to Chapter 4.2 (commencing with Section 65913). [¶] A cause of action brought pursuant to this subdivision shall not be maintained until 60 days have expired following notice to the city or clerk of the board of supervisors by the party bringing the cause of action, or his or her representative, specifying the deficiencies of the general plan, specific plan, or zoning ordinance. A cause of action brought pursuant to this subdivision shall accrue 60 days after notice is filed or the legislative body takes a final action in response to the notice, whichever occurs first. A notice or cause of action brought by one party pursuant to this subdivision shall not bar filing of a notice and initiation of a cause of action by any other party."

[low-income] housing." (§ 65009, subd. (d)(1)) is subject to section 65009, subdivision (d). That provision, requires that, before a complaint may be filed, the complaining party must notify the local authority of the alleged deficiency in a low-income housing decision and give the local body an opportunity to rectify the error.

■ Although the statute does not specify the time within which such a notice must be given, it is our conclusion that the statute must be interpreted as containing a time limit within which this requirement must be met. ■ We reach this conclusion in light of the general principle that "[i]t is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit." (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].) The goal of section 65009 is to provide "certainty for property owners and local governments regarding decisions made pursuant to this division." (§ 65009, subd. (a)(3).) Section 65009 does so by providing short time limits for filing challenges to land use planning decisions. This intent applies equally to each of its sections, including section 65009, subdivision (d), and each section must be read in such a way as to effectuate this goal. It is for this reason that we cannot read section 65009, subdivision (d), in the manner suggested by Urban Habitat because such a reading imposes no time limit at all within which a party must notify the local authority of a challenge to a land use planning decision impacting low-income housing.

■ Although the statute does not provide a time limit within which notice of a claim must be given to a local land use agency, we will interpret the general time limit of 90 days for bringing a complaint regarding a land use decision set out in section 65009, subdivision (c), as equally applicable to section 65009, subdivision (d). Put another way, if section 65009, subdivision (c), requires that a complaint regarding an allegedly erroneous decision must be filed within 90 days of the date the decision is made, then a notice of such a deficiency must also be filed within 90 days under section 65009, subdivision (d).

This requirement harmonizes all sections of the statute by imposing one uniform deadline for the date on which the initial step in bringing a legal challenge to a land use planning decision must be made. It also avoids the result that, in one section of a statute specifically designed to ensure finality with regard to land use planning decisions, such challenges are subject to clear deadlines, while in another section of the same statute, no finality can ever be assured, because no deadline exists for initiating such a claim.

■ In sum, a party bringing a challenge governed by section 65009, subdivision (d), has 90 days from the date a legislative action is taken or

approval is given to notify the local land use authority of any claimed deficiencies in such an action or approval. Its claim then accrues 60 days after it gives this notice.

### D. *Claims Subject to Section 65009, subdivision (d)*

In their discussion of the proper construction of section 65009, subdivision (d), both Urban Habitat and the City assume that all of Urban Habitat's claims are governed by section 65009, subdivision (d), albeit for different reasons. Underlying Urban Habitat's arguments regarding the proper interpretation of section 65009, subdivision (d), is its conclusion that, because its claims are brought "in support of or to encourage or facilitate" low-income housing, section 65009, subdivision (d), applies to its complaint. The City's arguments regarding that statute's accrual provision assume that Urban Habitat's complaint is brought "with respect to actions taken" by a local land use authority, and therefore is subject to section 65009, subdivision (d).

 In making these assumptions, both Urban Habitat and the City ignore the fact that that provision contains a *two-pronged* requirement for applicability of section 65009, subdivision (d), to affordable housing-based claims. It is certainly the case, under the first prong, that section 65009, subdivision (d), applies to actions "brought in support of or to encourage or facilitate" low-income housing. However, as amicus curiae League of California Cities points out, the second prong that must be satisfied before section 65009, subdivision (d), will apply to such a claim is that the claim must be one that challenges "actions taken" pursuant to a variety of land use planning statutes.[3] (§ 65009, subd. (d)(2).) Thus, the issue we now address is whether Urban Habitat's claims fall under that second prong of section 65009, subdivision (d).

### E. *First, Second, and Third Causes of Action*

In finding that each of Urban Habitat's claims was barred by section 65009, subdivision (d), the trial court concluded that all of Urban Habitat's claims

---

[3] The land use planning statutes to which section 65009, subdivision (d), applies are as follows: Section 65580 et seq. governs the requirement that a community's general plan contain a housing element. Section 65589.5 requires certain findings by local agencies to support a denial of a proposed low-income housing. Section 65863.6 requires that any local ordinance that "limits the number of housing units which may be constructed on an annual basis shall contain findings as to the public health, safety, and welfare of the city or county to be promoted by the adoption of the ordinance which justify reducing the housing opportunities of the region." Chapter 4.2 contains the "Least Cost Zoning Law" (§ 65913 et seq.), which requires that cities zone sufficient vacant land at densities that can accommodate low-income affordable housing. Finally, section 65915 concerns the award of "density bonus[es]" for the construction of low-income housing and section 66474.2 governs tentative map approval.

amounted to a facial challenge to two City enactments: its 1986 Growth Management Ordinance, and the 1996 Housing Cap. In so doing, the court erred as to the first, second, and third causes of action, which are not facial claims.

The first, second and third causes of action are based on allegations that, although the City consistently asserted that the number of units that could permissibly be built under the Housing Cap was sufficient to meet its Regional Housing Needs Allocation, in April 2006 Urban Habitat allegedly discovered that this was not the case.

On April 24, 2006, the city manager wrote a memorandum to the city council stating "that the City's remaining unmet portion of its share of the RHNA . . . was 2,889 units . . . ." The complaint alleges that, because the "remaining residential potential" under the Housing Cap was only 1,686 units, the City could not meet its obligation, under California law, to satisfy its Regional Housing Needs Allocation. The complaint alleges that "[a]t the present time, the Housing Cap poses an immediate regulatory barrier to the construction of new affordable housing, in that the units remaining under the Housing Cap . . . are numerically insufficient to satisfy the City's remaining unmet share of the Bay Area Regional Housing Need Allocation . . . ."

Urban Habitat also alleged that the City's Growth Management Ordinance has been implemented in a manner that, as of April 2006, makes it impossible for the City to meet its share of the Regional Housing Needs Allocation, which runs through 2009. Specifically, under the Growth Management Ordinance, the maximum number of building permits allowed during 2007, 2008, and 2009 is 2,250 units. According to the complaint: "This total number of permits is numerically insufficient to accommodate the unmet balance of the City's share of the RHNA during the present planning period, which (according to City documents) was 2,889 as of April 24, 2006. Accordingly, a current and immediate conflict exists between the Growth Management Program and the City's obligations under state law."

Thus, the first cause of action alleges that, as a result of this insufficiency, the City's Housing Cap and Growth Management Ordinance "are inconsistent with the requirements of . . . the state Zoning and Planning law . . . the Housing Element Law . . . the Least Cost Zoning Law and the Density Bonus Law." Similarly, the second cause of action claims that the Housing Cap now "prevent[s] the City from accommodating the unmet portion of its share of the RHNA" and, therefore, is an invalid exercise of the City's police power. The third cause of action argues that this same problem creates a general plan inconsistency.

 These three claims do not challenge a specific action taken by the City. As we have explained, one important feature of each of the subdivisions of section 65009 is that the limitations periods set out in the statute are triggered by specific *acts* of local land use planning authorities. Thus, section 65009 refers to local land use planning "decision[s]" (§ 65009, subd. (a)(2)), "finding[s]" (§ 65009, subd. (b)), "determination[s]" (*ibid.*), and "actions taken" (§ 65009, subd. (d)). Because these claims are not brought as to "actions taken" as that phrase is defined in section 65009, subdivision (d), they are not subject to the statute of limitations set out in this section.

Our conclusion is supported by *Travis, supra*, 33 Cal.4th 757. In that case, our Supreme Court considered a complaint that made two claims. First, the landowner/plaintiffs challenged decisions made by a local land use authority in which conditions were imposed on their permits. Second, the plaintiffs argued that the ordinance under which the conditions were imposed was preempted by a state law that was enacted well after the ordinance was enacted.

With regard to the first claim, the *Travis* court held that the imposition of conditions on a permit was an adjudicatory decision that fell within the statute of limitations set out in section 65009, subdivision (c). (*Travis, supra*, 33 Cal.4th 757, 769.) However, the *Travis* court reached a different conclusion with regard to the second claim concerning the failure to amend an ordinance that had fallen out of compliance with state law. The court held that this claim was not a challenge to a decision to adopt or amend an ordinance. Rather, the challenge was to "the Board's failure to repeal or amend the Ordinance and its continued enforcement despite having been preempted by the Costa-Hawkins Act in 1996." The landowners argued that "[a]pplication of section 65009 to claims of preemption by a later enacted statute is unworkable . . . because it would preclude any challenge to an ordinance that was valid when enacted but later preempted by state law." (*Travis, supra*, 33 Cal.4th at pp. 771–772.) The *Travis* court agreed, holding that a challenge to an ordinance that is "based on preemption by later enacted state statutes . . . is subject to the three-year limit of Code of Civil Procedure section 338 rather than the 90-day limit of Government Code section 65009. Plaintiffs, in claiming the County has breached a duty to bring its zoning code into compliance with later enacted state law, are not complaining of the Ordinance's *adoption* but of the Board's failure . . . to repeal the Ordinance or amend it to conform to state law." (*Id.* at p. 772.) The *Travis* court also pointed out that "a challenge to the Ordinance based on its conflict with state laws passed in 1984 and 1995 could not have been brought within 90 days of the Ordinance's 1982 effective date. [Citation.] Section 65009 was intended to require prompt challenges to zoning ordinances, but not to demand the impossible." (*Id.* at p. 773.)

In this case, the City argues that *Travis* applies only to those claims in which an ordinance is preempted by state law after the ordinance is enacted. In making this argument, the City relies on a footnote in *Travis*, in which the court stated that its holding "applies only to claims of preemption by statutes enacted *after the Ordinance's adoption*, and not to statutory or constitutional provisions already in force at the time the Ordinance was adopted." (*Travis, supra*, 33 Cal.4th at p. 772, fn. 9.) In making this argument, the City misconstrues the real point the *Travis* court is making, which is simply that, when an ordinance conflicts with statutory or constitutional provisions already in effect when the ordinance is passed, then the claim begins to accrue when the ordinance is passed. This observation is entirely consistent with the court's general conclusion on which we rely here: a challenge to a local government's decision based on events that occurred after that decision took place and, therefore could not have been brought during the statutory time limits, is not governed by section 65009.

Other courts have read *Travis* as standing for this general proposition. For example, in *Fontana Redevelopment Agency v. Torres* (2007) 153 Cal.App.4th 902, 912 [62 Cal.Rptr.3d 875], the plaintiff challenged the implementation of an amendment to a redevelopment agreement. Citing *Travis* as authority, the *Fontana* court pointed out that "even when an illegal act may be immune from facial attack, it can be challenged under new factual circumstances." (*Fontana*, at p. 913.)

Nor is *Napa Citizens for Honest Government v. Napa County Bd. of Supervisors* (2001) 91 Cal.App.4th 342, 388 [110 Cal.Rptr.2d 579], helpful to the City. In *Napa Citizens*, the court interpreted section 65009 as "providing that the decision to adopt a general plan or a specific plan may be attacked no later than 90 days after that decision was made." *Napa Citizens* does not, however, stand for the proposition that a regulation's initial enactment is the triggering event for *any claim* related to that regulation. As we have explained, both our reading of the plain language of section 65009 and *Travis* support the conclusion that the claims brought by Urban Habitat in its first through third causes of action do not fall within section 65009, because they do not attack a specific land use planning "decision" but, rather, relate to events that occurred well after such a decision.

We also reject the City's argument that *DeVita v. County of Napa* (1995) 9 Cal.4th 763 [38 Cal.Rptr.2d 699, 889 P.2d 1019] compels a different result. As Urban Habitat points out, the *DeVita* court noted that in a situation in which a land use planning decision becomes invalid after it is adopted, and this invalidity is not corrected, "courts may then be asked to intervene to remedy deficiencies . . . ." (*Id.* at p. 793.) This statement is entirely consistent with *Travis* and with our reading of section 65009.

■ Thus, because the first through third causes of action in Urban Habitat's complaint allege that, with the passage of time, the City's Housing Cap and Growth Management Ordinance now conflict with the City's obligations under state law to meet Regional Housing Needs Allocations, these claims are not subject to section 65009, subdivision (d).

■ Instead, these claims are subject to the more generally applicable statute of limitations set out in Code of Civil Procedure section 338, subdivision (a), which applies to "[a]n action upon a liability created by statute, other than a penalty or forfeiture." (See also *Travis, supra,* 33 Cal.4th at p. 772.) The claims set out in the first through third causes of action in Urban Habitat's complaint are timely under section 338, subdivision (a). As the *Travis* court explained, that provision—which governs an action to enforce a statutory obligation—"runs . . . from the first time the challenge could [have been] brought . . . ." (33 Cal.4th at p. 774.) In this case, the complaint alleges that the City could not meet its obligations under the Regional Housing Needs Allocation in April 2006. The complaint was filed in October 2006 and, therefore, was timely under Code of Civil Procedure section 338, subdivision (a).

F. *Fourth Cause of Action*

The fourth cause of action alleges that the City failed to comply with mandatory duties set out in Program 19.1 of its Housing Element to take steps, by April 15, 2004, to rezone a certain amount of property within the City to accommodate its share of the Regional Housing Needs Allocation.

■ The fourth cause of action is also subject to Code of Civil Procedure section 338 rather than section 65009. A failure to comply with duties allegedly imposed by law is neither an "action" nor a "decision" and, therefore, does not fall under section 65009. Furthermore, the claim is timely under Code of Civil Procedure section 338, subdivision (a), because it was brought in October 2006, less than three years after the date by which the complaint alleges the City was required to complete rezoning in order to accommodate its share of the Regional Housing Needs Allocation.

G. *Fifth Cause of Action*

The fifth cause of action alleges that the Housing Element adopted by the City on April 15, 2003, does not comply with California's Housing Element Law. This claim challenges a "decision" of a local authority, namely the adoption of the Housing Element. It is also brought "in support of or to encourage or facilitate the development of [low-income] housing . . . ." (§ 65009, subd. (d)(1).) Therefore, it is subject to section 65009, subdivision (d).

As we have held, notice of a claim under section 65009, subdivision (d), must be made within 90 days after the challenged decision is made. "A cause of action brought pursuant to this subdivision shall accrue 60 days after notice is filed or the legislative body takes a final action in response to the notice, whichever occurs first." (§ 65009, subd. (d)(2).)

Urban Habitat gave notice on June 20, 2006, to the City that the Housing Element was not in compliance with state law and then filed its complaint on October 17, 2006. Therefore, its claim is untimely and barred by section 65009, subdivision (d).

## H. *Sixth Cause of Action*

The sixth cause of action alleges that the deficiencies in the Housing Element that form the basis of the fifth cause of action also constitute a violation of the Least Cost Zoning Law (§ 65913 et seq.). For the reasons set forth in our discussion of the fifth cause of action, such a claim, which arose when the Housing Element was enacted, is also subject to, and barred by, section 65009, subdivision (d).

## I. *Seventh and Eighth Causes of Action*

The seventh and eighth causes of action set forth claims for unlawful housing discrimination under the California Fair Employment and Housing Act (§ 12900 et seq.). Thus, the seventh cause of action alleges that the City, through its implementation or failure to implement general plan policies and programs, has made housing opportunities unavailable to a member of a protected class "at a significantly higher rate than it does to others." The City's policies have allegedly had a discriminatory effect on "families with children, on female-headed households and on racial and ethnic minorities."

The eighth cause of action alleges that "[t]he City's failure to adopt an adequate Housing Element, to implement its adopted Housing Element programs, and to designate and zone, and allow residential development of, sufficient land with appropriate standards to facilitate development of housing affordable to lower-income households, has the effect of denying housing opportunities and the enjoyment of residence in the city to households in these protected groups to a significantly greater degree than to other households."

Urban Habitat's housing discrimination claims arise not out of decisions by the City in enacting its general plan and Housing Element, but out of events that took place after these enactments, events described in the complaint as occurring in 2006. Therefore, these claims are not subject to the limitations periods set out in section 65009 but, rather, were timely under the Fair

Employment and Housing Act, which provides that such claims must be commenced "not later than two years after the occurrence . . . of an alleged discriminatory housing practice." (§ 12989.1.)

## J. *Ripeness*

The trial court also held that the first, second and third causes of action are not ripe. We disagree.

 The City argues that, because the complaint does not challenge a specific permit denial, Urban Habitat's claims are not ripe. Ripeness is analyzed under a two-pronged test. The first prong requires consideration of the issues' "fitness" for "judicial decision." An issue is fit for judicial decision when it is " ' "definite and concrete" ' " and " ' "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." ' " (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1722 [45 Cal.Rptr.2d 752].) The second prong is one in which we must consider " 'the hardship to the parties of withholding court consideration.' " (*Id.* at p. 1723.)

Both prongs are met here. In *Building Industry Assn. v. City of Oceanside* (1994) 27 Cal.App.4th 744 [33 Cal.Rptr.2d 137], a challenge was brought to a growth control ordinance on the ground that it conflicted with a local entity's obligation to meet its share of regional housing needs. The court held that such a claim could be brought so long as "in light of facts relating to the local entity's compliance with its obligation to meet its share of regional housing needs, there was conflict between a numerical growth control ordinance and state law or a general plan." (*Id.* at p. 763.) Urban Habitat has alleged such a conflict.

Second, the City's alleged failure to meet its affordable housing obligations under state law can be resolved through declaratory and mandamus relief and, at least as alleged in the complaint, the failure to provide affordable housing without question harms the parties and the general public.

The trial court erred, therefore, in finding that the claims were barred under the ripeness doctrine.

## K. *Standing*

The City argues that neither Urban Habitat nor Sandra DeGregorio have standing to challenge the City's housing-related regulations. We disagree.

As Urban Habitat points out, citing *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432 [261 Cal.Rptr. 574, 777 P.2d 610], in a "citizen's action" to enforce a public duty, "it is sufficient that the plaintiff be interested as a citizen in having the laws executed and the public duty enforced." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1236 [94 Cal.Rptr.2d 740].) So long as the "public duty is sharp and the public need weighty" a citizen has a sufficient interest to confer standing. (*Id.* at p. 1237.) Without question, the City's duty to enforce the shortage of affordable housing is sharp and the public's need for such housing is "weighty." (See *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1564 [55 Cal.Rptr.2d 465].) Both Urban Habitat and Sandra DeGregorio, therefore, have standing to bring this action.

As for the City's argument that Urban Habitat does not have standing under the California Fair Employment and Housing Act (FEHA) (§ 12900 et seq.) to bring a claim for housing discrimination, FEHA permits an organization to bring suit to enforce the FEHA. (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1424 [60 Cal.Rptr.3d 719].) Urban Habitat has alleged facts that establish the City's housing policies "show[] a drain on its resources from both a diversion of its resources and frustration of its mission" which is sufficient to establish that it is an aggrieved party. (*Fair Housing of Marin v. Combs* (9th Cir. 2002) 285 F.3d 899, 905.) The same is true of the housing discrimination claims brought pursuant to section 65008, which prohibits discrimination by local government against development of housing for low- and moderate-income persons.

L. *Mandatory Duty*

The City also argues that, although the trial court did not base its dismissal of the complaint on this ground, the fourth, fifth and sixth causes of action should have been dismissed because the City has no mandatory duty enforceable by law to comply with the requirement contained in its Housing Element that it rezone City land to accommodate low-income housing by a stated date. We have found that the fifth and sixth causes of action are time-barred and, therefore, need not decide this issue as to these claims.

With regard to the application of this claim to the fourth cause of action, we also need not reach this issue. The trial court did not rule on it and, in any event, it is not dispositive of this appeal. (*Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418, 427 [29 Cal.Rptr.3d 909].)

## IV. DISPOSITION

The judgment of dismissal is affirmed insofar as it dismisses the fifth and sixth causes of action in the complaint, but reversed with regard to the remaining causes of action of the complaint. Each party is to bear their own costs on appeal.

Kline, P. J., and Richman, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 22, 2008, S165539. Werdegar, J., did not participate therein.