Filed 2/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| COASTAL ACT PROTECTORS,<br><br>   Plaintiff and Appellant,<br><br>      v.<br><br>CITY OF LOS ANGELES,<br><br>   Defendant and Respondent. | B308306<br><br>(Los Angeles County<br>Super. Ct. No.<br>20STCP00630) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Gaines & Stacey, Fred Gaines and Alicia B. Bartley for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Terry Kaufmann Macias, Assistant City Attorney, Amy Brothers and Patrick Hagan, Deputy City Attorneys for Defendant and Respondent.

# INTRODUCTION

The California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.; Coastal Act) provides a "comprehensive scheme to govern land use planning for the entire coastal zone of California." (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793.) One of its goals is to "[m]aximize public access to" the beach. (Pub. Resources Code, § 30001.5, subd. (c).) To that end, the Coastal Act requires a coastal development permit (CDP) for any "development" resulting in a change in the intensity of use of, or access to, land or water in a coastal zone. (*Id.*, §§ 30600, subd. (a), 30106.)

On December 11, 2018, the City of Los Angeles (the City) adopted the Home Sharing Ordinance No. 185,931 (Ordinance), which imposes certain restrictions on short-term vacation rentals, and provides mechanisms to enforce those restrictions. In February 2020, appellant Coastal Act Protectors (CAP) sought a writ of mandate to enjoin enforcement of the Ordinance in the Venice coastal zone until the City obtains a CDP. CAP claims the Ordinance constituted a "development" under the Coastal Act; therefore, CAP contends, the City acted illegally in failing to obtain a CDP before implementing the Ordinance in the Venice coastal zone.

The trial court denied CAP's petition for writ of mandate on two independent grounds: (1) the petition was time-barred by the 90-day statute of limitations in Government Code section 65009, and (2) the Ordinance does not create a change in intensity of use and, therefore, is not a "development" requiring a CDP.

As discussed below, we agree with the trial court's holding that the 90-day statute of limitations in Government Code section 65009 subdivision (c)(1)(B) applies, and not, as CAP contends, the

three-year statute of limitations in Code of Civil Procedure section 338(a). Because this conclusion is dispositive of the matter, we need not decide whether the Ordinance constitutes a "development" subject to the CDP requirements of the Coastal Act.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Short term rental activity (i.e., transient stays of 30 days or less) in the City began accelerating in about 2013 or 2014 due to the proliferation of internet sites, such as Airbnb and VRBO, which allow individuals and/or companies to advertise short term rentals to a large audience.

In June 2015, the Los Angeles City Council adopted a motion directing the Department of City Planning (the Planning Department) to prepare and present an ordinance governing short term rentals in Los Angeles. The motion referenced the City Council's desire to allow residents to share their homes with guests, while prohibiting wholesale conversions of residential buildings to vacation rentals, which "significantly reduc[es] rental stock and contribut[es] to increased rents and decreased affordable housing." After a multi-year legislative process, including approximately 10 public hearings, the City Council adopted the Ordinance on December 11, 2018. On December 17, 2018, the Mayor approved the Ordinance.

Before the Ordinance went into effect, the Planning Department entered into a contract, effective April 16, 2019, with Host Compliance, a company that develops online registration

---

[1]    Except for background facts included for context, we limit our recitation of the facts to those relevant to the statute of limitations issue.

systems for short term rental activity, and monitors internet advertising of short-term rentals for cities throughout the country. The City Council and the Mayor approved the Planning Department's supplemental budget request for approximately $485,609 to cover Host Compliance's charges for building an online registration system for Los Angeles from April 16, 2019, to June 30, 2019. By July 1, 2019 (the effective date of the Ordinance), the City was accepting applications from residents who wanted to participate in home sharing.

The City Council and Mayor also approved $1,456,825 for the Planning Department to fund the City's contract with Host Compliance from July 1, 2019, to June 30, 2020, to maintain the online registration system, and to begin monitoring the internet for short term rental advertising in violation of the Ordinance.

In November 2019, the City began enforcing the Ordinance, sending out warning letters to those suspected of advertising short term rentals without including the required associated registration number in the advertisement.

On February 13, 2020, over a year after the City adopted the Ordinance, CAP filed a petition for writ of mandate and complaint for declaratory and injunctive relief. The petition alleged the Ordinance constitutes "development" as defined by the Coastal Act, and therefore, the City had a "clear legal duty imposed by statute [citation] to submit an application for a CDP to the Coastal Commission in order to obtain approval of the . . . Ordinance." Because the City did not obtain a CDP before adopting the Ordinance, CAP sought "a writ of mandate to invalidate the . . .Ordinance as it applies to the Venice Coastal Zone."

After considering the evidence and hearing oral argument, the trial court issued its statement of decision. It concluded the 90-day statute of limitations in Government Code section 65009 subdivision (c)(1)(B) applied, and the petition was untimely.[2] It reasoned that the City's purported duty to obtain a CDP was a procedural task to perform in enacting a lawful Ordinance; therefore, CAP's petition challenging the City's failure to obtain a CDP constituted an action to "attack, review, set aside void, or annual" the decision of the City to adopt the Ordinance, bringing it within the ambit of Government Code section 65009 subdivision (c)(1)(B). The trial court went on to address the merits of the petition, stating: "If *arguendo*, the court is wrong, and [Code of Civil Procedure] section 338(a)'s three-year limitations period applies, the court will address the merits of CAP's claim."[3] It concluded the Ordinance is not a "development" under the Coastal Act for which the City needed a CDP because the Ordinance "affects only the permissible use of property for short-term rentals; the site-specific owner of the property

---

2      Government Code section 65009, subdivision (c)(1)(B) states, in relevant part (including the introductory text of subdivision (c)(1)): "[N]o action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (B) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance."

3      Code of Civil Procedure section 338, subdivision (a) states "[a]n action upon a liability created by statute, other than a penalty or forfeiture" must be brought "[w]ithin three years."

5

actually changes the use . . . . [T]he ordinance itself is not a change in the intensity of use under the Coastal Act and does not require a CDP."

The trial court entered judgment in favor of the City. CAP timely appeals from the judgment.

## DISCUSSION

CAP contends the trial court erred in concluding its action was time-barred by Government Code section 65009, subd. (c)(1)(B) (hereafter section 65009(c)(1)(B)) because the City's purported failure to comply with the Coastal Act is "not an 'action' or 'decision' contemplated by [section 65009]." CAP argues this action is instead subject to the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (a) (hereafter section 338(a)) for actions "upon a liability created by statute." "'The determination of the statute of limitations applicable to a cause of action is a question of law we review independently.'" (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491.)

Government Code section 65009 "is intended 'to provide certainty for property owners and local governments regarding decisions made pursuant to this division' (§ 65009, subd. (a)(3)) and thus to alleviate the 'chilling effect on the confidence with which property owners and local government can proceed with projects' (*id.*, subd. (a)(2)) created by potential legal challenges to local planning and zoning decisions." (*Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 765 (*Travis*).) "To this end, section 65009 establishes a short statute of limitations, 90 days, applicable to actions challenging several types of local planning

6

and zoning decisions" including, as relevant here, the adoption of a zoning ordinance. (*Ibid.*)[4]

It is undisputed that CAP filed this action more than 90 days after the City's adoption of the Ordinance. CAP argues its petition is nevertheless timely under the three-year statute of limitations in section 338(a). We disagree.

Our Supreme Court's holding in *Travis* is instructive. There, plaintiffs "contend[ed] the 90-day limitation prescribed by section 65009, subdivision (c)(1)(B) does not apply to their preemption claim because their challenge is not to the Board's decisions to 'adopt or amend' the Ordinance, but to the Board's failure to repeal or amend the Ordinance and its continued enforcement despite having been preempted by [a later enacted statute]." (*Travis, supra*, 33 Cal.4th at p. 771.) The *Travis* court agreed with plaintiffs, reasoning: Plaintiffs' "challenge to the Ordinance, to the extent it is based on preemption by later enacted state statutes . . . is subject to the three-year limit of Code of Civil Procedure section 338 rather than the 90-day limit of Government Code section 65009. Plaintiffs, in claiming the County has breached a duty to bring its zoning code into compliance with later enacted state law, are not complaining of the Ordinance's *adoption* but of the Board's failure, since the enactment of [new state laws], to repeal the Ordinance or amend it to conform to state law. To this extent, therefore, the action is not one to "attack, review, set aside, void, or annul the decision of a legislative body to *adopt* … a zoning ordinance." (*Id.* at p. 772.)

---

[4]     In the trial court and in their briefs on appeal, the parties assume the Ordinance is a zoning ordinance. CAP has therefore forfeited any argument to the contrary. (*Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 295.)

The *Travis* court further explained: "[A] challenge to the Ordinance based on its conflict with state laws passed in 1984 and 1995 could not have been brought within 90 days of the Ordinance's 1982 effective date. [Citation.] Section 65009 was intended to require prompt challenges to zoning ordinances, but not to demand the impossible." (*Id*. at p. 773.) "Lest [its] holding be misunderstood[,]" the *Travis* court "emphasize[d] it applies only to claims of preemption by statutes enacted *after the Ordinance's adoption*, and not to statutory or constitutional provisions already in force at the time the Ordinance was adopted." (*Id*. at p. 772, fn. 9.)

Applying the holding in *Travis*, the Court of Appeal in *Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561, 1575-1578 (*Urban Habitat*), held certain causes of action in the complaint were subject to the three-year statute of limitations set forth in section 338(a), not section 65009. In *Urban Habitat*, housing nonprofit Urban Habitat alleged the City of Pleasanton failed to comply with state laws requiring it to allocate a specified portion of new housing units for low-, very-low-, and moderate-income populations. (*Urban Habitat, supra*, 164 Cal.App.4th at pp. 1567-1569.) The trial court sustained the City of Pleasanton's demurrer on the ground that Urban Habitat's causes of action were time-barred under section 65009(c)(1). (*Urban Habitat,* at p. 1570.) The Court of Appeal reversed on the first through fourth causes of action, which alleged the city failed to meet housing obligations that arose *after* the city adopted its zoning ordinances. (*Id*. at pp. 1575-1578.) Thus, based on *Travis*, those causes of action were subject to the three-year limit in section 338(a). (*Urban Habitat,* at pp. 1575-1578.)

8

Unlike the situations in *Travis* and *Urban Habitat*, requiring CAP to bring its action against the City within 90 days of the adoption of the Ordinance would not "demand the impossible." (See *Travis, supra*, 33 Cal.4th at p. 773.) The Coastal Act, including its CDP requirements, predates the Ordinance. Thus, even assuming the City had a mandatory duty to obtain a CDP for application of the Ordinance to residences in the Venice coastal zone, as CAP contends, that duty existed at the time the City enacted the Ordinance. CAP's petition, therefore, is an action to "attack, review, set aside, void, or annul" the City's decision to adopt a zoning ordinance applicable to the Venice coastal zone without first obtaining a CDP. (See section 65009(c)(1)(B).)

In *1305 Ingraham, LLC v. City of Los Angeles* (2019) 32 Cal.App.5th 1253 (*1305 Ingraham*), a different panel of this court likewise distinguished *Urban Habitat*. In *1305 Ingraham*, the petitioner filed an administrative appeal challenging the city's project permit compliance review in connection with the development of a mixed-use commercial and affordable housing project. (*1305 Ingraham, supra*, 32 Cal.App.5th at p. 1255.) The city scheduled but never held a hearing on the appeal. (*Ibid.*) A few days after the scheduled hearing day, the city approved the project. (*Ibid.*) Nine months later, the petitioner filed a petition for writ of mandate alleging "the city's failure to hold a hearing on its [administrative] appeal violated a Los Angeles Municipal Code provision requiring the area planning commission to hold a hearing prior to deciding an appeal." (*Ibid.*) Relying in part on *Urban Habitat*, the petitioner argued section 338(a) should apply to its petition. (*1305 Ingraham, supra*, at p. 1265.) The panel distinguished *Urban Habitat* as a case concerning "a city's

alleged failure to comply with a law requiring the city to enact zoning regulations by a deadline set several years out; it did not arise in the context of a specific project or discrete permitting decision within the scope of section 65009(c)(1). Thus, the more general three-year statute of limitations applied. Here, the city's alleged failure to comply with a statute arose within the context of its approval of an affordable housing project." (*1305 Ingraham, supra*, at p. 1266.) The panel further explained that "[e]ven if section 338(a) is applicable in a broad sense, "a specific statute of limitations takes precedence over a general one, even though the latter ""would be broad enough to include the subject to which the more particular provision relates.""""" (*Ibid.*)

In this case, as in *1305 Ingraham,* the City's alleged failure to comply with its duty to obtain a CDP arose at the time it adopted the Ordinance, not "several years out." (*1305, supra*, 32 Cal.App.5th at p. 1255.) CAP waited over a year, however, to file its suit seeking to "attack, review, set aside, void and/or annul" the City's adoption of the Ordinance without first obtaining a CDP. (§ 65009(c)(1)(B).) We therefore conclude section 65009's 90-day limitation period applies, and the petition is untimely.

Our conclusion comports with the Legislature's stated intent to "provide certainty for property owners and local governments regarding" local zoning and planning decisions. (§ 65009, subd. (a)(3).) As discussed above, after allowing for the 90-day period for challenges to the Ordinance, the City expended significant resources to implement and enforce the Ordinance, including $485,609 for Host Compliance to build an online registration system, and approximately $1.4 million for a one-year monitoring of the system.

**DISPOSITION**

The judgment is affirmed. The City is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**


CURREY, J.


We concur:


WILLHITE, Acting P.J.


COLLINS, J.


11